222   285
226   ¹439

# Bland, Appellant, v. Tipton Water Company.

*Corporations—Water companies—Franchises—Injunction—Equity—*
*Act of June 19, 1871, P. L. 1360.*

· Where a water company has the undoubted right or franchise to supply water to the public within the limits of a designated township, a riparian owner on a stream from which the water company takes some of its supply has no standing to maintain a bill in equity under the Act of June 19, 1871, P. L. 1360, to restrain the water company from delivering water to a railroad company within the limits of the township, although it appears that the railroad company after receiving the water from the pipes of the water company carries the water in its own pipes beyond the limits of the township. If in such a case it appears that the water company is misbehaving itself in the exercise of its franchise, the remedy is a proper proceeding at the instance of the commonwealth.

Where a preliminary injunction has been granted against a water company at the instance of a landowner at a time when a condemnation bond has not been approved, such injunction will not be made perpetual where it appears that the company subsequently filed a bond which was approved by the court. In such a case the proper penalty for the attempt of the water company to take water before legally authorized to do. so is imposed upon it by directing it to pay the costs in the injunction proceedings.

Where a bond to secure a landowner has been filed by a water company, and the bond has been approved by the court, the approval of the bond involves an adjudication that an attempt had been previously made by the company to settle with the landowner.

Argued April 20, 1908. Appeal, No. 318, Jan. T., 1907, by plaintiff, from decree of C. P. Blair Co., Equity Docket D., No. 567, dismissing bill in equity in case of Fred Bland v. The Tipton Water Company, The Pennsylvania Railroad Company and The American Pipe Manufacturing Company. Before MITCHELL, C. J., FELL, BROWN, POTTER and STEWART, JJ. Affirmed.

Bill in equity for an injunction.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*A. V. Barker* and *W. I. Woodcock*, for appellant.—The plaintiff has a right to demand the restraining hand of the court to be raised in defense of his inviolate title to his property, before the act is done of which he complains: Edgwood R. R. Company's Appeal, 79 Pa. 257; Bly v. Water Co., 197 Pa. 80; Sowego Water & Power Co., 16 Pa. C. C. Rep. 179; Portland Water, etc., Co., 29 Pa. C. C. Rep. 180; Peifly v. Water Supply Co., 214 Pa. 340.

*John G. Johnson*, with him *Neff, Riley & Hicks*, for appellee, Pennsylvania Railroad Company, and *O. H. Hewitt* and *H. B. Gill*, for appellee, Tipton Water Company.—The plaintiff has no standing to complain: Larimer, etc., Ry. Co. v. Ry. Co., 137 Pa. 533; Rafferty v. Central Traction Co., 147 Pa. 579; Becker v. Ry. Co., 188 Pa. 484.

OPINION BY MR. JUSTICE BROWN, October 12, 1908:

This bill, which was filed under the Act of June 19, 1871, P. L. 1360, was properly dismissed by the court below. It was not necessary to determine what rights had been acquired by the Tipton Water Company from the Merivale Water Supply Company, or to discuss those possessed by the Pennsylvania Railroad Company under the Acts of April 15, 1859, P. L. 679, and April 22, 1905, P. L. 264. The limit of the court's inquiry in this proceeding was to ascertain whether the Tipton Water Company, the real defendant, did, in fact, possess the right or franchise to do the act through which the appellant alleges injuries resulted and will result, to his private rights, and, in view of the undoubted franchise conferred upon it by its charter and the undisputed facts in the case, the learned chancellor ought not to have rested with the mere statement that there was some force in the contention that the plaintiff had no standing to complain under the act of 1871, but should have so distinctly ruled.

The Tipton Water Company was incorporated under the act of April 29, 1874, and its supplements, for the purpose, according to its charter, "of supplying water to the public in Antis township, Blair county, Pennsylvania, and to such persons,

partnerships and corporations residing or located therein as may desire the same." It was incorporated February 11, 1903, and, by due and appropriate action, on November 21, 1904, appropriated perpetually the entire flow of the waters of Tipton run. The appellant is the owner in fee of a farm through which this run flows for a distance of 600 feet, emptying into the Juniata river, on which his lands also abut and border. He does not assail the water company's charter nor question its right to appropriate the waters of Tipton run for the purpose of supplying the same to the public in Antis township, but he would have it enjoined from taking the waters of the run, because, after it takes and conveys them into Antis township, it there metes out, sells and delivers to the Pennsylvania Railroad Company, as one of its customers, large quantities of the same, which that company conveys out of the township for the supply of its engines, stations and shops.

After its appropriation of the waters of Tipton run the Tipton Water Company laid a line of pipe leading from its impounding dam to the line of the right of way of the Pennsylvania Railroad Company at Tipton station, also in said township. Prior to the laying of this pipe the Pennsylvania Railroad Company had laid and owned, on or near its right of way, running westwardly from Tipton station, a line of pipe through which it took water from Tipton run by pumping the same from a milldam. When the pipe laid by the Tipton Water Company was completed it was connected with the said line of pipe owned by the Pennsylvania Railroad Company, and some of the water taken from Tipton run by the water company is conveyed by pressure from the reservoir of the water company through the line of pipe owned by the Pennsylvania Railroad Company, westwardly, outside of the township of Antis, to the railroad company's shops, in the township of Logan. On the line of the water company's pipe there is a meter by which it measures the water which it furnishes to the Pennsylvania Railroad Company. The water is all furnished within the township of Antis and amounts to 1,500,000 gallons daily. The water company has no control over the disposition made by the Pennsylvania Railroad Com-

pany of the water beyond the point of delivery and owns no pipe or other means of delivering water beyond the termination of its line at Tipton station. The railroad company has established a water station at Tipton, where, on an average, fifty engines per day take water for steam purposes. The capacity of each engine's tank is 7,000 gallons, and the number of gallons thus taken daily is approximately 350,000. In addition to the pipe which the water company has laid and which connects with the pipe of the Pennsylvania Railroad Company running westwardly it has laid another line of pipe leading from its dam or reservoir to the right of way of the railroad company at Tipton station, and that company has laid and owns a line of pipe on its right of way leading eastwardly, which has not yet been connected with the pipe of the water company, but it is the intention to connect these pipes, that additional waters, to be delivered by the Tipton Water Company to the railroad company, may be conveyed through said pipe of the railroad company eastwardly out of the township for the railroad company's use. A finding of fact, unchallenged by any of the twenty-eight assignments of error is that there is no agreement between the Tipton Water Company and the Pennsylvania Railroad Company relative to the use or disposition of the water or the place to which it is to be transported by the railroad company, the water company merely selling the water to the railroad company and delivering it at Tipton station, in the township of Antis. The findings of fact are numerous and somewhat confused, but the foregoing is an epitome of them, from which, without regard to the rights acquired by the water company from the Merivale Water Supply Company, or those alleged to be possessed by the Pennsylvania Railroad Company under the acts of 1859 and 1905, is to be determined the only question which the appellant can raise by his bill.

The right of the Tipton Water Company to take the waters of Tipton run for the purpose of supplying water to the public in Antis township is not questioned, and it was in the exercise of this right or franchise that the waters of the run were taken, resulting in what, in this proceeding, may be conceded to be

an injury to the private rights of the complainant as a riparian owner. His complaint is not that the water company, after taking the water, refuses to supply it to any individual, partnership or corporation within the township of Antis, the territory covered by its charter, but is that it there furnishes large quantities to the Pennsylvania Railroad Company, which that company, after the supply and delivery of the same to it in that township, takes elsewhere for its corporate purposes. This is not what injures him. The injury done to him is the taking of the waters of the run, but they are taken in the exercise of a clear right or franchise to take them for the purpose of supplying water to the public in Antis township. In daily furnishing to the engines of the railroad company 350,000 gallons of water in that township, the water company is not exercising a mere right, but performing a duty, for the railroad company, in the operation of its road in said township is to be regarded as a part of the public therein, within the purview of the act of 1874. How much of this water is actually converted into steam within the township is no more a question in this proceeding than would be the quantity of water remaining in stage horses, watered by the company in the township, after they had passed beyond its borders; and so, upon principle, this is equally true of the remaining 1,150,000 gallons measured, sold and delivered to the Pennsylvania Railroad Company within the said township. The appellant's right to complain is concededly limited to a complaint that the water company, in taking the waters from the run to the injury of his private rights, is exercising a right or franchise which in fact it does not possess; but, as it has such undoubted right or franchise for the purpose of supplying water to the public in Antis township, it is none of his concern what its customers do with the water after it there delivers the same to them. Its right under clause 2 of sec. 34 of the act of 1874 is to supply water to those asking for the same where it is located, and if it be misbehaving itself in the exercise of that right, it is for the commonwealth alone to correct it. Failure to distinguish between an attempt to exercise a right or franchise which a corporation does not, in fact, possess, to the injury of the private rights

of the complainant, and its mere misbehavior in the exercise of an undoubted right or franchise is responsible for this fruitless litigation.   The inquiry which the appellant would have had the court make under his bill was not into the rights conferred by the charter of the water company, but into its conduct under the same.   This can be done only at the instance of the commonwealth: Windsor Glass Co. v. Carnegie Co., 204 Pa. 459.

It is urged that this case is identical with Bly v. White Deer Mountain Water Company et al., 197 Pa. 80.   This results from a misapprehension of what was decided in that case, for what was there enjoined would not be permitted here.   Bly's complaint was that the White Deer Mountain Water Company, or the White Deer Creek Water Supply Company, or both of them, were proceeding to build a dam or reservoir across the White Deer creek, and were digging ditches and trenches and laying mains and pipes from the said reservoir into municipalities, boroughs and townships other than White Deer and Kelly townships, for the purpose of supplying water to such municipalities, boroughs and townships.   Neither company had the right or franchise to supply water in the territories into which the pipes were being laid, and the prayers of the bill were for an injunction to restrain each of them from taking any of the waters of White Deer creek for the purpose of supplying the same to the public in any municipality, borough or township other than the townships of White Deer or Kelly. The injunction as to the White Deer Creek Water Supply Company ought manifestly to have been continued, for reasons appearing in the opinion, and as to the water company we said, through our Brother MESTREZAT: "The only questions, therefore, for consideration here are (1) the right of the White Deer Mountain Water Company to appropriate the waters of White Deer creek for the purpose of supplying the same to the public in any municipality, borough or township other than White Deer township, in Union county, and (2) the right of the plaintiff to have that question determined by a court of equity in a proceeding under the provisions of the act of June 19, 1871."   What was enjoined was the taking of the

waters of the creek for the purpose of directly supplying the same to the public in townships and municipalities other than the one in which the water company was authorized to supply the same. In the present case no pipe of the water company runs outside of Antis township, and it is not undertaking to deliver water to anyone, much less to the public, at any point beyond the limits of that township. The supply and delivery of which the appellant complains are within the township, and to a single customer of the water company. If the pipe of this customer connecting with that of the water company should not extend beyond the lines of Antis township, it would hardly be pretended that the supply of the water would not be entirely lawful, and we can recognize no difference because, after the supply and delivery of the water to the railroad company are complete within the township, that company, under no arrangement between it and the water company, carries the water for its own corporate purposes beyond the line of the township.

At the time this bill was filed—February 14, 1906—a bond had not been approved by the court to secure to the appellant the payment of his damages, and the court found as a fact that no effort had been made to agree upon the amount of compensation to be allowed him for the taking and appropriation of the waters of the run. In view of this he contends that the preliminary injunction should have been made perpetual. Though no bond had been approved at the time these proceedings were instituted, one had been tendered to the appellant in December, 1904, and, upon his refusal to accept it, notice was given to him that it would be presented to the court of common pleas of the county for approval on the 24th of that month. In pursuance of this notice a bond was filed on that day, but was not approved because excepted to by the appellant. Subsequently, on May 16, 1906, another bond, in a larger amount, was substituted and approved by the court. As no bond had been approved at the time the appellant applied for the injunction, the restraining writ was properly issued and ought to have been continued until the water company secured to him the payment of his damages in the mode pre-

scribed in sec. 41 of the act of April 29, 1874. This it did when its bond was approved by the court in May, 1906, and the injunction which, up to that time, had properly restrained all interference with the appellant's rights, ought then to have been dissolved. In the decree dissolving it and dismissing the bill the proper penalty for the attempt of the water company to take the waters of the run before legally authorized to do so was imposed upon it by directing it to pay the costs in the proceedings below.

As to the contention that, as there was no evidence of any attempt by the water company to agree with the appellant as to the amount of compensation he ought to receive for the damages he sustained, the tender and filing of the bond were unauthorized, we need only repeat what was said of a similar contention in Wadhams v. Lackawanna & Bloomsburg Railroad Co., 42 Pa. 303: "It is next insisted that there was no evidence of any attempt by the defendants to settle with the plaintiff, and agree upon the damages before they entered upon his land and before they filed the bond given as a security. Hence it is inferred that the tender of the bond, and the filing of the same, was unauthorized by law, and that the defendants were not empowered to appropriate the land for the said road. Though the acts of assembly do not in terms require any attempt to make a settlement before a tender of a bond or filing it in the common pleas, it is perhaps a just inference from their language that there should be some evidence of inability of the parties to agree before the court should undertake to pass upon the security offered. But the very offer of a bond is an assertion by one of the parties that they cannot agree, and is in itself some proof of such inability, for without the consent of both such an agreement cannot be made. And if it were not so, the action of the court approving the sureties, and directing the bond to be filed, involves an adjudication that everything had been done which entitled the company to have the bond filed. If an attempt to settle was a prerequisite, the order of the court is conclusive that the attempt had been made. The decree of the court, like any other judgment, is final between the parties, as to all matters

adjudicated therein directly, and to all facts which were essential to the adjudication." The act of 1874 does "not in terms require any attempt to make a settlement before a tender of a bond or filing it in the common pleas."

All of the assignments of error are overruled and the decree of the court below is affirmed, the costs on this appeal to be paid by the appellant.