554 A.2d 585

The Peoples Natural Gas Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

482

Argued May 26, 1988, before Judges COLINS and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Dennis J. Lewis*, with him, *Victoria Lee, Alder, Cohen & Grigsby, P.C.*, and *William P. Boswell*, Secretary and General Counsel, for petitioner.

*Frank B. Wilmarth*, Deputy Chief Counsel, with him, *Daniel P. Delaney*, Chief Counsel, for respondent.

*Walter A. Bunt, Jr.*, with him, *Bruce Wiegand* and *Nancy L. Krzton, Kirkpatrick & Lockhart*, and *Jay W. Dawson*, for intervenor, T. W. Phillips Gas and Oil Co.

*Jack E. Solomon*, University Legal Counsel, for intervenor, Indiana University of Pennsylvania.

OPINION BY JUDGE COLINS, February 16, 1989:

The Peoples Natural Gas Company (Peoples) petitions for review of an order of the Pennsylvania Public Utility Commission (Commission) entered on August 24, 1987, denying Peoples' exceptions to the Initial Decision of Administrative Law Judge (ALJ) NEMEC, granting summary judgment in favor of T. W. Phillips Gas and Oil Co. (Phillips), and dismissing Peoples' complaint against Phillips.

## HISTORY

Peoples initiated this matter on December 30, 1985, by filing with the Commission a petition for issuance of a declaratory order. Therein, Peoples sought a declaration that Phillips lacked the requisite authority to provide service to a proposed cogeneration facility (Cogen Plant) to be owned and operated by the Indiana University of Pennsylvania (IUP). Phillips filed an answer, therein asserting that it did possess the requisite authority to serve the IUP facility. IUP petitioned to intervene.

Peoples filed a formal complaint against Phillips with the Commission on February 20, 1986. It alleged therein that Phillips had neither charter rights nor certificated rights to provide service in Indiana County and therefore, Phillips was unlawfully providing service to IUP's Robertshaw Building. Phillips filed an answer on March 17, 1986, denying these allegations. The Commission, reasoning that the issue of whether Phillips had the right to provide service in Indiana County would be resolved in the formal complaint proceeding, entered an order on March 12, 1986, denying Peoples' petition for declaratory order without prejudice to Peoples' right to pursue the service rights issue in the complaint proceeding.

Thereafter, Peoples filed an amended complaint challenging Phillips' right to serve the Cogen Plant, IUP's Robertshaw Building and a tire manufacturing facility owned by McCreary Tire & Rubber Co. (McCreary).[1] In its answer thereto, Phillips submitted that: (1) it had been serving customers in Indiana County continuously since at least 1916; (2) it was currently providing natural gas service to over two thousand six hundred (2,600) residential, commercial and industrial customers in Indiana County, a number of whom including IUP's Robertshaw Building are located in White Township; and (3) its tariffs, as filed with and approved by the Commission, have included Indiana County in its service territory since at least 1916 and its current tariff specifically lists Indiana County and numerous municipalities, including White Township as being within its authorized service territory (Reproduced Record (RR) at 110a). IUP and McCreary intervened in favor of Phillips.

Discovery ensued and several pre-hearing conferences were held. Peoples maintained that there were several issues to be decided: (1) whether Phillips' charter rights provided the authority to merely purchase gas rather than serve customers in Indiana County; (2) whether Phillips was authorized to provide service to the Cogen Plant even if they had the right to provide service in White Township since the Cogen Plant itself, as opposed to the point of delivery of the gas, was in Indiana Borough; and (3) the resolution of "public policy issues". Phillips on the other hand, proposed that the sole issue to be resolved was whether it possessed charter and certificated rights to provide service in Indiana County. As a result, disputes arose as to the proper scope of

---

[1] IUP's Robertshaw Building and McCreary are both situated in White Township, Indiana County. The proposed Cogen Plant will be located in Indiana Borough.

discovery. ALJ NEMEC and the Commission subsequently issued numerous interim orders in response to *inter alia*, motions to compel responses to interrogatories, motions for protective orders and motions for sanctions.

On August 25, 1986, during the course of on-going discovery, Phillips filed a motion for partial summary judgment on the sole issue of whether it possessed certificated authority to provide service in White Township. Appended to this motion were certified copies of: (1) the Commission's order, dated December 16, 1974, granting to Phillips a certificate of public convenience (1974 certificate) which expressly stated that Phillips had a right to serve in "all or portions of certain boroughs, townships and cities in ... Indiana Count[y]"[2] (RR at 316a); (2) Phillips' application to the Commission which referred to Phillips' predecessor's gas tariff which specifically authorized the provision of gas service in White Township (RR at 320a); (3) a certificate of service verifying that Peoples had been served with a copy of the application for the 1974 certificate (RR at 362a); (4) copies of Phillips' articles of incorporation, and (5) the affidavit of Phillips' Vice President Robert M. Hovanec (Hovanec) wherein he attested that according to the records he had reviewed, Phillips' predecessor was serving customers in White Township at the time of the application (RR at 354a).

The ALJ issued an order dated September 25, 1986, granting Peoples leave to depose Hovanec and an Initial

---

[2] Peoples maintains that the 1974 certificate was issued to Phillips as part of a corporate reorganization whereby the predecessor company's utility operations were placed in a new corporate entity. Therefore, Peoples submits that the 1974 certificate was a mere formality to allow the new company to continue the old company's utility operations (*i.e.* transferring the service rights in the territory "presently served" by the old company to the new company).

Decision dated September 26, 1986, granting Phillips' motion for partial summary judgment. The ALJ concluded that as a matter of law, Phillips possessed the right to render natural gas service to the public in White Township pursuant to the 1974 certificate. Peoples filed exceptions to this decision and a petition for Commission Review and Answer to a Material Question.

On November 10, 1986,[3] Phillips filed a motion for summary judgment. Attached thereto were affidavits from officials of IUP and McCreary attesting to the fact that they were receiving service from Phillips at a point within White Township.[4] The ALJ deferred ruling on this motion pending resolution of the appeal from the order granting partial summary judgment.

Hearings commenced on the issue of service rights. Peoples conducted cross-examination of Hanovec who testified *inter alia*, about Phillips' provision of service in White Township at the time the Commission granted the 1974 certificate. Peoples thereafter stipulated on the record that Phillips was providing service to 144 customers in White Township in 1974 (RR at 961b).

By Opinion and Order in Answer to a Material Question entered January 27, 1987, the Commission affirmed the ALJ's decision granting partial summary judgment and remanded the matter to the ALJ for further proceedings. Peoples petitioned this Court for review. In a Memorandum Opinion authored by Judge CRAIG and dated

---

[3] There is a discrepancy in the parties' briefs concerning the date on which this motion for summary judgment was filed. The record provides no clarification as to the proper date and because there are no allegations of untimeliness, we shall accept the date cited by the Commission as correct.

[4] In his decision granting partial summary judgment, ALJ NEMEC ruled that White Township was included within the grant of authority Phillips received by virtue of the 1974 certificate issued by the Commission.

April 8, 1987, this Court quashed the appeal on the basis that the order granting partial summary judgment was not a final appealable order.

The ALJ sent notice to the parties that he would now entertain argument on the summary judgment motion. Both parties filed briefs and on May 5, 1987, the ALJ entered summary judgment in favor of Phillips. Peoples' exceptions were denied by the Commission in its order entered August 24, 1987, wherein it affirmed the ALJ's decision and dismissed Peoples' complaint. Peoples now petitions this Court for review.

## ISSUES

Peoples contends that the grant of summary judgment was erroneous, because a material issue of fact exists as to Phillips' service rights in White Township and the motion for partial summary judgment was supported solely by the verified affidavit of Hovanec, presented without an opportunity to cross-examine. Peoples also submits that the grant of summary judgment was erroneous because: (1) it was based primarily upon improper partial summary judgment; (2) it was contrary to *Lukens Steel Co. v. Pennsylvania Public Utility Commission,* 92 Pa. Commonwealth Ct. 530, 499 A.2d 1134 (1985); and, (3) it improperly cut off Peoples' right to present evidence on public policy issues.

## PARTIAL SUMMARY JUDGMENT

Preliminarily, we note that summary judgment should be granted only where the moving party demonstrates that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035(b).

ALJ NEMEC entered partial summary judgment on the sole issue of whether Phillips possessed *certificated* authority to provide natural gas service in White Town-

ship. In doing so, he considered not only the Hovanec affidavit but also the language of the order granting the 1974 certificate. That order provides in pertinent part:

[the] application of T. W. Phillips Gas and Oil Co. (new) and T. W. Phillips Gas and Oil Company (old) for approval of (1) the acquisition by T. W. Phillips Gas and Oil Company (old) of all the outstanding voting capital stock of T. W. Phillips Gas and Oil Co. (new), (2) the acquisition by the former and transfer by the latter of certain gas property, rights, liabilities and franchises of T. W. Phillips Gas and Oil Company (old), (3) the right of T. W. Phillips Gas and Oil Co. (new) to begin to offer, render, furnish or supply gas service to the public in the same territory presently served by T. W. Phillips Gas and Oil Company (old) being all or portions of certain boroughs, townships and cities in ... Indiana ... Count[y], and (4) the abandonment by T. W. Phillips Gas and Oil Company (old) of all gas service, be and is hereby approved, and that a certificate of public convenience issue at A.98887 evidencing such approval.

The application for the 1974 certificate referenced in the above order indicates that Phillips' predecessor:

owns property for the production, gathering, transmission, storage, and distribution of natural gas and presently renders natural gas service to the public in various communities in the Count[y] of ... Indiana ... Pennsylvania, which territory is more fully described in its Tariff Gas-Pa. P. U. C. No. 9, Original Pages Nos. 3a and 3b.

Phillips' tariff which is referenced in the application reads:

[t]he company's charter territory includes ... Indiana ... Count[y], Pennsylvania. Gas Service is

available in all localities where the Company has pipe lines, including all or a portion of the following Cities, Boroughs and Townships ... White Township ... .

Logically, Phillips argued in its motion for partial summary judgment that because IUP and McCreary were located in White Township, its 1974 certificate clearly authorized it to provide the service in question. ALJ NEMEC adopted this reasoning.

Interestingly, Peoples' pleadings prior to the entry of partial summary judgment alleged that Phillips possessed no service rights in Indiana County. However, subsequent thereto, Peoples has consistently maintained that the true issue to be decided is *where* in White Township was Phillips' predecessor authorized to provide service. Peoples argues that the 1974 certificate did not grant any new service rights to Phillips but instead, restricted Phillips to providing service in areas where its predecessor had served. We agree with the Commission that in the entry of partial summary judgment and ultimately summary judgment, this issue never became relevant, as the ALJ and the Commission rejected Peoples' interpretation of the 1974 certificate.

Further, Peoples asserts that the motion for partial summary judgment was supported solely by the untested affidavit of Hovanec and discovery was not complete at the time partial summary judgment was entered. It submits that this is in violation of the rule set forth in *Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932), as well as 52 Pa. Code §5.102.(b).[5]

---

[5] 52 Pa. Code §5.102.(b) provides that upon motion for summary judgment the opposing party shall have an opportunity to respond within twenty days of service of the motion and present affidavits in response thereto. It further provides that affidavits *may* be supplemented or opposed by depositions, answers to interrogatories or further affidavits.

In *Nanty-Glo*, a trial judge, after hearing the uncontradicted testimony of a witness, directed a verdict, thereby taking from the jury the opportunity to ascertain the truth of the witness' averments. The Pennsylvania Supreme Court ordered that the question of credibility was for the jury, and that a new trial was warranted. *Nanty-Glo* has no application to the instant proceeding. This is an administrative proceeding wherein the ALJ serves as the factfinder.

It is true that discovery was incomplete at the time partial summary judgment was entered and Peoples had not yet deposed Hovanec. However, subsequent thereto, three days of evidentiary hearings were held on the issue of service rights. At the final hearing, Peoples cross-examined Hovanec with respect to the averments contained in the affidavit. Thereafter, Peoples stipulated to the fact that Phillips' predecessor was serving 144 customers in White Township in 1974, thus establishing the truth of Hovanec's averments. Therefore, the issues surrounding the propriety of the grant of partial summary judgment have been rendered moot.[6]

Our review of the extensive record in this matter indicates that the ALJ and Commission correctly determined that as a matter of law, Phillips was entitled to partial summary judgment on the issue of certificated rights. The application for the 1974 certificate, the certificate itself, Phillips' tariff and the Hovanec affidavit were all considered and provide ample support for the conclusions reached. Furthermore, the testimony elicited during cross-examination of Hovanec verifies the accuracy of the statements in the affidavit.

---

[6] Nevertheless, because Peoples alleges that final summary judgment was based upon the erroneous entry of partial summary judgment, we concluded that a full discussion of the issues surrounding partial summary judgment was warranted.

## Summary Judgment

Peoples alleges that the Commission's grant of final summary judgment was based upon an improper partial summary judgment and that the Commission refused to consider the evidence adduced at the hearing held subsequent to the entry of partial summary judgment. We have concluded herein that the ALJ's grant of partial summary judgment and the Commission's subsequent affirmance was proper. Therefore, we find it unnecessary to address Peoples' first contention. In addition, we are not persuaded by Peoples' allegation that the ALJ ignored the evidence adduced at hearings when rendering summary judgment. We have reviewed the evidence presented at the evidentiary hearings in question. The testimony presented on the issues of service rights and points of delivery for the gas service by Phillips in White Township is extensive. The rendering of summary judgment in favor of Phillips was consistent with the evidence presented and the theory adopted by the Commission.

Throughout these proceedings the Commission has interpreted the 1974 certificate as affording Phillips the right to provide service and expand its service within its charter territories. The clearest expression of the Commission's position, as stated in its brief to this Court, is a simplistic one. It reads:

> [T]he language cited by Peoples in the 1974 certificate, when read in context, did not limit ... Phillips' right to build pipelines and provide service throughout White Township, but instead simply recognized the obvious fact that ... Phillips, at any given point in time, only provides service where its pipelines are then located.

Although Peoples has disputed Phillips' charter rights to provide service in Indiana County, its allegations are unsupported by the evidence. The Commission, in its

brief to this Court, outlines clearly the charter rights possessed by Phillips' predecessors. Noting that Phillips is a product of the merger of several former gas companies, the Commission references documents of record which delineate those charter rights (RR at 380(b), 416(b), 524(b), 530(b)).

The Commission maintains that when Phillips filed its application for the 1974 certificate, it was the understanding of the Commission that Phillips was going to provide service wherever it chose to lay pipelines within its charter territory, that its charter territory included White Township, and that the Commission had never acted to restrict the charter territory of Phillips' predecessors. It is undisputed that Peoples was served with a copy of the application for the 1974 certificate and did not raise the issue of charter rights in that proceeding.

As to certificated rights, in referring to the intentions of Phillips with respect to the 1974 application, the Commission has stated in its brief:

> Phillips intended, and the Commission understood, that ... Phillips' claim for certificated authority was for the authority of its predecessor, that is, the power to serve along its pipelines, wherever it would choose to construct them within its original charter territory.

The Commission requests that we accept its interpretation of the order granting the 1974 certificate and reject the theory that that certificate effectively froze Phillips' service rights in time. We defer to the Commission's expertise in public utility matters and accept this reasonable interpretation as controlling.

### LUKENS STEEL

The order of the Commission is in accord with this Court's decision in *Lukens Steel*. Lukens, a steel com-

pany situated in the exclusive[7] service territory of Philadelphia Electric Co. (PECO) wanted to obtain electric service from an alternate utility, Pennsylvania Power & Light (PP&L). In order to do so, Lukens proposed that it acquire a right-of-way and transmission line from PP&L, extending from a point near Lukens' plant nearly ten miles to PP&L's facility in Lancaster County. PP&L agreed to transfer the property only upon the Commission's issuance of a declaration that the acquisition for the purpose of delivery of service by PP&L to Lukens was in the public interest.[8]

Lukens sought such a declaration but the Commission denied it concluding that the project would not be economically viable and therefore, would not be in the public interest. On petition for review, this Court affirmed the decision of the Commission, therein stating:

> Lukens first contends that the PUC committed an error of law in failing to conclude that Lukens has a 'presumptive right' to its requested relief since Lukens would be taking delivery of PP&L electricity in PP&L territory and importing this electricity to its Coatesville plant via Lukens' own private transmission facilities; by obtaining a point of delivery within PP&L's territory, it has become a true customer of PP&L which PP&L then has the duty under the law to serve. It relies on: Bland v. Tipton Water Company, 222 Pa. 285, 71 A. 101 (1908); Columbia Gas of Pennsylvania

---

[7] No other public utility had been granted the authority to provide retail electric service in this territory.

[8] PP&L also requested that Lukens pay all costs associated with the construction by PP&L of an additional transmission line which would be necessary to connect Lukens to PP&L's system. This line, approximately sixteen miles long, would take five years to build and would require Commission siting approval.

v. Peoples Natural Gas Company, 44 Pa. P.U.C. 308 (1969); Northwestern Mining and Exchange Company of Erie v. West Penn Power Company, 25 Pa. P.U.C. 468, 61 P.U.R. (N.S.) 186 (1945); Borough of Schuylkill Haven v. P.P. & L., 12 Pa. P.U.C. 567, 3 P.U.R. (N.S.) 127 (1934). These cases are distinguishable; in each the customer owned property at the point of delivery in the utility's franchise territory. The tribunals in those cases reasoned that these customers were members of the public in the service territory where they owned property and were therefore entitled to public utility service there. *See e.g.* Bland v. Tipton Water Co., 222 Pa. at 289; Columbia Gas of Pennsylvania v. Peoples Natural Gas Company, 44 Pa. P.U.C. at 311. This condition does not exist in this case. Moreover, in none of the instances cited was the PUC asked, as it here is, to sanction the transfer of public utility property to a customer. Lukens admits that it owns no property in PP&L's service territory which could serve as a point of delivery. Indeed its purpose in seeking a declaration that it is in the public interest that it obtain property from PP&L is to own property in PP&L's service area.

*Lukens Steel,* 92 Pa. Commonwealth Ct. at 535-36, 499 A.2d at 1137.

In the case at hand, both IUP and McCreary are situate in White Township. Pursuant to *Bland* and *Lukens Steel,* as long as they take delivery in White Township, where Phillips has certificated service rights, they may transport the natural gas to other locations for ultimate consumption. Therefore, Peoples' argument that Phillips has no authority to serve the Cogen Plant, lo-

cated in Indiana Borough, necessarily fails, as IUP's point of delivery is in White Township. IUP can take delivery of the gas in White Township and then it is free to transport that gas to the Cogen Plant in Indiana Borough. Accordingly, we conclude that the Commission did not ignore our decision in *Lukens Steel*, but, instead correctly interpreted and applied its meaning.

## PUBLIC POLICY ISSUES

Peoples presents two issues for review: (1) whether the Commission's "new public policy" of permitting competition for customers in areas where service territories overlap is contrary to public policy; and (2) whether the entry of summary judgment improperly cut off Peoples' right to present evidence of the public interest.

The Commission affirmed the ALJ's Conclusion of Law which reads: "[i]t is this Commission's public policy not to prohibit competition between gas utilities where authorized service territories overlap." Peoples has erroneously labeled this as a "new" policy of the Commission. This policy, established by Commission adjudications, is a long standing one. *See Re Montefiore Hospital Association of Western Pennsylvania*, 54 Pa. P.U.C. 566 (1981); *Columbia Gas of Pennsylvania, Inc, v. Peoples Natural Gas Co.*, 44 Pa. P.U.C. 308 (1969); *Borough of Aspinwall v. Duquesne Light Co.*, 41 Pa. P.U.C. 301 (1964).

Peoples was a party in *Columbia Gas* and had an interest in the outcome of *Montefiore*. In the latter case, the Commission held that because Peoples and Equitable Gas Co. were both authorized to serve the area wherein Montefiore Hospital was located, Montefiore's preference controlled. It further held that Commission authorization was not required in order for Montefiore to switch from Equitable to Peoples.

Peoples now argues that this public policy violates the general proposition that competition between utilities should be regulated carefully in order to protect the public interest. However, the extent to which competition may be allowed between utilities is a matter within the exclusive discretion of the Commission. *See Dublin Water Co. v. Pennsylvania Public Utility Commission,* 206 Pa. Superior Ct. 180, 213 A.2d 139 (1965); *Sayre v. Pennsylvania Public Utility Commission,* 161 Pa. Superior Ct. 182, 54 A.2d 95 (1947). Absent an abuse of that discretion, this Court may not disturb the action of the Commission. *Dublin.* Peoples attacks this policy as unfair because it allegedly allows territorial competition without price competition between utilities. The Commission in its Opinion and Order affirming the grant of summary judgment stated:

> [r]egarding Peoples' argument that if Phillips is permitted to provide gas service to IU (sic) and McCreary under the competitive policy that Peoples will lose other industrial loads to the ultimate rate disadvantage of residential and industrial customers, Peoples overlooks the fact that *the Commission has authorized flexible rates to meet gas-to-gas competition, as well as competition from alternate fuels, and that such rates can be found in Peoples' tariff.* Peoples, as well as other jurisdictional gas utilities, has been confronted with customers who have, or have threatened to switch to alternate fuels, self-help gas and to transportation gas. In light of this situation the Commission, as it is authorized to do, has concluded that it is in the public interest to spur the efficiencies that are created by competition by permitting customers to choose among suppliers

in overlapping service territories. By making gas utilities more efficient, losses to competing fuels and unregulated sources of gas will be minimized. (Emphasis added.)

Our examination of the record leads us to a conclusion that no abuse of discretion has been shown.

Finally, Peoples cites *Aspinwall* for the proposition that it had the right to present evidence of the public interest in these proceedings. In *Aspinwall*, the Commission held that where two public utilities *seek authorization* to serve in the same territory, an examination of many factors is warranted to determine if such authorization is in the public interest. The Commission distinguished the situation where, as here, two utilities are already authorized to serve in the same area. Under such circumstances, Commission approval is not a prerequisite and customer preference is controlling. *Id.*

Applying the holding in *Aspinwall* to the instant proceeding, we conclude that once the Commission determined that Phillips possessed service rights in White Township, Indiana County, it was not required to conduct any further inquiry into the public interest. Because Peoples and Phillips are both authorized to provide service in White Township, IUP's preference is controlling.

## CONCLUSION

In sum, we conclude that the ALJ's and the Commission's grant of partial summary judgment was proper. In addition, the Commission correctly determined that no material issue as to any fact existed and that Phillips was entitled to final summary judgment as a matter of law. Accordingly we affirm.

ORDER

AND NOW, this 16th day of February, 1989, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

Judge MACPHAIL did not participate in the decision in this case.