**CITY OF PITTSBURGH, Plaintiff,**

v.

**WEST PENN POWER COMPANY d/b/a Allegheny Power, Allegheny Power System, Inc., Duquesne Light Company; and DQE, Inc., Defendants.**

**Civil Action No. 97–1772.**

United States District Court,
W.D. Pennsylvania.

Jan. 6, 1998.

Wendelynne J. Newton, Thomas L. Van Kirk, Buchanan Ingersoll, Jacqueline R. Morrow, City of Pittsburgh, Dept. of Law, Pittsburgh, PA, Rodney R. Akers, Sidley & Austin, Washington, DC, for Plaintiff.

Wendy E.D. Smith, David L. McClenahan, James E. Scheuermann, Kirkpatrick & Lockhart, Pittsburgh, PA, William J. Murphy, Murphy & Shaffer, Baltimore, MD, Thomas L. Allen, Donna M. Maus, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Defendants.

Carl S. Hisiro, John F. Povilaitis, Bohdan R. Pankiw, Pennsylvania Public Utility Com'n, Harrisburg, PA, for Movant.

### ORDER

LANCASTER, District Judge.

AND NOW, this 6th day of Jan., 1998, after the plaintiff, City of Pittsburgh, filed an action in the above-captioned case, and after motions to dismiss were submitted by both defendants, Allegheny Power and Duquesne Light Company, and after a Report and Recommendation was filed by the United States Magistrate Judge granting the parties ten days after being served with a copy to file written objections thereto, and upon consideration of the objections filed by plaintiff and the response to those objections filed by defendants from which it appears that a hearing on the matter is unnecessary, and upon independent review of the motion and

the record and upon consideration of the Magistrate Judge's Report and Recommendation, which is adopted as the opinion of this Court,

IT IS ORDERED that defendants' motions to dismiss (Docket Nos. 10 and 13) are granted and that plaintiff's motion for oral argument on its objections (Docket No. 28) is denied.

### REPORT AND RECOMMENDATION

MITCHELL, United States Magistrate Judge.

#### I. *Recommendation*

It is respectfully recommended that the motions to dismiss filed by defendants Allegheny Power and Duquesne Light (Docket Nos. 10 and 13) be granted.

#### II. *Report*

Presently before this Court for disposition is a motion to dismiss brought by defendants, West Penn Power Company d/b/a Allegheny Power, and Allegheny Power System (collectively "Allegheny Power") and a motion to dismiss brought by defendants Duquesne Light Company and DQE, Inc. (collectively "Duquesne Light").

Plaintiff, the City of Pittsburgh ("the City"), commenced this action under 15 U.S.C. § 1 ("the Sherman Act") and 15 U.S.C. § 18 ("the Clayton Act") claiming that an agreement entered into between Allegheny Power and Duquesne Light regarding the withdrawal of Allegheny Powers' application before the Pennsylvania Utility Commission ("PUC") and the proposed merger between the defendants are violative of the federal antitrust laws.

According to the complaint, the City targeted two former industrial sites for redevelopment under industrial sites re-use initia-

tives.[1] **Complaint** ¶¶ 12, 13. It is alleged that the City believed that competition for retail electric utility service in the Redevelopment Zones would attract business and commercial and residential development to the Zones which, in turn, would facilitate redevelopment in these areas. *Id.* at ¶ 14. Duquesne Light and Allegheny Power are the only electric utilities which possess Certificates of Public Convenience [2] from the PUC to provide electric service in Allegheny County. *Id.* at ¶ 17. Duquesne Light contends that its Certificate of Public Convenience grants it the exclusive right to serve the City and its citizens with retail electric utility service. *Id.* at ¶ 28.

The City, nevertheless, entered into discussions with Allegheny Power in the summer of 1996 regarding the possibility of Allegheny Power supplying retail electric utility service for the Redevelopment Zones. Plaintiff acknowledges in the complaint that retail electric utility service as provided by Allegheny Power would be substantially cheaper than if provided by Duquesne Light. *Id.* at ¶ 26. By letter dated July 9, 1996, Allegheny Power indicated that it was interested in petitioning the PUC so that it could provide electrical service to the Redevelopment Zones and requested that the City first file a petition with the PUC seeking authorization to permit competition within the City. *Id.* at ¶¶ 18–21. In accordance with their agreement, the City filed a Petition in Support of Choice for Retail Electric Service Within City of Pittsburgh on September 4, 1996, and on September 9, 1996, Allegheny Power promptly intervened. *Id.* at ¶¶ 20–24.

On September 27, 1996, Duquesne Light also moved to intervene in order to oppose the petition filed by the City stating that the Redevelopment Zones are within its authorized service area and not Allegheny Power's

1. The two zones designated for redevelopment are the 123 acre "South Side Works" fronting on the Monongahela, and the 233 acre "Nine Mile Run" located between the City's Squirrel Hill and Swisshelm Park Neighborhoods. *Id.* at ¶ 12. The two sites will be referred to herein collectively as the "Redevelopment Zones."

2. A Certificate of Public Convenience "makes it lawful for [a] public utility to provide service

within a defined territory, and imposes on the public utility an obligation to provide service in that territory." *Lukens Steel Co. v. Pennsylvania Public Utility Commission,* 92 Pa. Comwlth. 530, 533 n. 1, 499 A.2d 1134, 1136 n. 1 (1985). Such a certificate must be obtained from the PUC before a public utility may supply service to a particular territory. 66 Pa.C.S. §§ 1101, 1102(a).

as evidenced by its Certificate of Public Convenience. *Id.* at ¶¶ 27, 28. Both the City and Allegheny Power have disputed Duquesne Light's position in this regard in the proceedings presently before the PUC. *Id.* at ¶¶ 28, 29.

On October 28, 1996, Allegheny Power applied separately to the PUC for approval to begin supplying electrical service to the Redevelopment Zones. On December 6, 1996, Duquesne Light filed a Protest to Allegheny Power's application again stating that it had the exclusive right to service those areas. *Id.* at ¶¶ 30–32. On December 9, 1996, the City sought to intervene in the PUC proceeding initiated by Allegheny Power since it was directly related to the City's previously filed petition. *Id.* at ¶ 34.

In the interim, on November 18, 1996, the City, through the Urban Redevelopment Authority of Pittsburgh, solicited competitive bidding from both Allegheny Power and Duquesne Light for the "electric utility infrastructure development" of the two Redevelopment Zones. *Id.* at ¶ 33. Both defendants responded to the bidding requests on December 16, 1996, with decidedly different proposals. *Id.* at ¶ 35. The City filed a Supplement to its original petition on January 3, 1997, informing the PUC of the Redevelopment Authorities actions. *Id.* at ¶ 36.

A prehearing conference was held on Allegheny Power's Application on February 25, 1997, before the Administrative Law Judge, the Honorable Robert P. Meehan. *Id.* at ¶ 39. The judge ordered that written direct testimony was to be submitted by the City and Allegheny Power on or before March 26, 1997, and by Duquesne Light on or before April 30, 1997. Hearings were scheduled for the week of June 9, 1997.[3] *Id.* at ¶ 39. The City and Allegheny Power submitted direct testimony on March 25, 1997, as ordered. On April 7, 1997, Duquesne Light and Allegheny Power announced that they had agreed to merge the two companies.[4] *Id.* at ¶¶ 41, 42. Once the announcement of the

merger was imminent, plaintiff alleges that Allegheny Power and Duquesne Light began to coordinate their efforts with respect to the pending Petition and Application proceedings. *Id.* at ¶ 46.

Duquesne Light filed a petition to stay the proceedings before Judge Meehan on April 28, 1997, citing the need to assess the effect of the merger on the PUC proceedings. *Id.* at ¶ 48. Judge Meehan denied the request on May 1, 1997, finding that a stay was not in the public interest and noting that construction on at least one redevelopment zone was scheduled to begin as early as June 1997. Accordingly, the hearings set for June 9, 1997, were to proceed as scheduled. *Id.* at ¶¶ 50–51.

On June 6, 1997, the Friday before the Monday hearings were to begin, Allegheny Power filed a Petition to Withdraw Application and Intervention with Judge Meehan, wherein it sought to withdraw its application to provide the Redevelopment Zones with electrical services and to withdraw its Intervention in the City's Petition which was designed to permit choice and competition within the Redevelopment Zones. *Id.* at ¶¶ 52, 53. Judge Meehan canceled the hearings scheduled for the following week and, on June 24, 1997, issued an Order granting Allegheny Power's petition to withdraw both its application and its intervention in the City's petition. *Id.* at ¶ 54. As a result, plaintiff contends that it has no choice but to obtain retail electric utility service and associated electric infrastructure development in the Redevelopment Zones from Duquesne Light. *Id.* at ¶ 55. These facts are said to be violative of the federal antitrust laws and to give rise to various state law claims.

Specifically, in its complaint, plaintiff has set forth claims under section 1 of the Sherman Act (Count I), and section 7 of the Clayton Act (Count II), as well as common law claims of Restraint of Trade (Count III), Civil Conspiracy (Count IV), Breach of Contract (Count V), Tortious Interference (Count

---

3. The PUC proceedings on the City's Petition, which was docketed at No. P–00961102 was consolidated with Allegheny Power's Application at Docket No. A–111250F0075 by Order dated March 13, 1997. *Id.* at ¶ 40.

4. Under the proposed merger, the defendant companies would exist as subsidiaries of a new company to be named Allegheny Energy.

VI), Breach of Covenant of Good Faith and Fair Dealing (Count VII) and Detrimental Reliance (Count VIII). Plaintiff seeks damages together with reasonable attorney fees and costs as to Counts I and Counts III through VIII and to enjoin defendants from merging.

Both defendants have filed motions to dismiss arguing that for various reasons plaintiff has not stated a claim upon which relief under the antitrust laws may be granted and that under the doctrine of exclusive primary jurisdiction this Court nevertheless lacks subject matter jurisdiction. Alternatively, under the doctrine of primary jurisdiction, defendants ask that the proceedings before this Court be stayed until such time as the proceedings before the PUC and the other regulatory agencies who are reviewing the propriety of the merger between the defendants is completed.

In reviewing a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. *Brader v. Allegheny General Hospital*, 64 F.3d 869, 873 (3d Cir.1995); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). The Court is not, however, required to accept as true unsupported conclusions and unwarranted references. *Schuylkill Energy Resources v. PP & L*, 113 F.3d 405, 417 (3d Cir.1997). Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*See ALA, Inc. v. CCAIR*, 29 F.3d 855 (3rd Cir.1994), *supra.* The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence in support of his claim. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Defendants contend that the complaint should be dismissed because the City does not have standing to bring this action in the first instance. Defendants argue that as a municipality the City cannot sue in a *parens patriae* capacity and that it has nevertheless failed to make a requisite showing that it has suffered an "antitrust injury." The City counters that it is not only bringing the suit on its own behalf as a purchaser of electricity but that it has pled sufficient facts to support a conclusion that it has suffered or will suffer an antitrust injury. We will address the latter argument first as it appears to be dispositive of the instant motion.[5]

■ Under the antitrust laws, private standing to sue for treble damages and injunctive relief is provided for in sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26, respectively.[6] Regardless of whether a party is seeking relief under § 4 or § 16, in order to have standing to pursue private antitrust claims, a plaintiff must show more than a mere causal link between the alleged antitrust violation and the claimed injury.[7] *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111–113, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986). Rather, Plaintiffs must prove *antitrust* injury, which is to say injury of the type the

---

**5.** Plaintiff, in its brief, alludes to an argument that the question of whether or not an antitrust injury has occurred is not properly addressed in a motion to dismiss. The Court of Appeals for the Third Circuit, however, has recently upheld the district court's dismissal of antitrust claims under Rule 12(b)(6) where the plaintiff failed to allege an antitrust injury. *Schuylkill Energy Resources v. PP & L, supra* at 417–418.

**6.** Under § 4, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages by him sus-

tained, and the cost of suit, including a reasonable attorney's fees." 15 U.S.C. § 15. In contrast, § 16 provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws ...." 15 U.S.C. § 26.

**7.** It is presumed in an antitrust standing and injury analysis that an antitrust violation has been sufficiently set forth in the complaint. *Valley Products Co. v. Landmark*, 877 F.Supp. 1087 (W.D.Tenn.1994), *affirmed*, 128 F.3d 398 (6th Cir.1997), 128 F.3d 398, 1997 WL 651359.

antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., supra* (emphasis in the original). *See Barton & Pittinos v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir.1997). Thus, the mere fact that a plaintiff may have been injured by the antitrust violation is not by itself sufficient to demonstrate standing to bring an antitrust suit. *Cargill, Inc. v. Monfort of Colorado, Inc., supra.*[8]

■ Here, plaintiff alleges that it has been injured by the "possibility of lessened competition" and that because of defendants' anticompetitive conduct—the proposed merger and Allegheny Power's withdrawal of its application filed with the PUC to supply power to the Redevelopment Zones—it has no choice but to obtain retail electric utility service in the Redevelopment Zones from Duquesne Light.[9] These injuries, in our view, do not rise to the level of antitrust injuries and preclude a finding that plaintiff has standing to pursue its antitrust action.

Plaintiff apparently does not dispute that at all times prior to this lawsuit it has purchased its electricity from Duquesne Light. Indeed, it appears that the Certificate of Public Convenience issued to Duquesne Light by the PUC provides it with the exclusive right to supply retail electric service to the City which necessarily includes the Redevelopment Zones. Although plaintiff now disputes that Duquesne Light has exclusive rights, its application to the PUC inviting competition into the Redevelopment Zone is premised on the fact that "Duquesne [Light] is at present the only electric utility possessing a certificate of public convenience … from the Commission to serve the City and its citizens." [10] It, therefore, seems clear that prior to the initiation of this suit, there was no competition in the retail market at issue and the City had no choice of utilities available to it. Thus, it seems equally clear that neither the proposed merger nor the withdrawal of Allegheny Power's application has lessened the competition within the City or the choices of utility companies available to the City. Rather, plaintiff is presently in the precise position it has always been in, namely that it must purchase its electricity from Duquesne Light. . Because defendants' agreement not to compete has not caused any change in the market or any other anticompetitive effects, it precludes a finding that the City has been injured. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., supra. See Balaklaw v. Lovell,* 14 F.3d 793, 798 (2d Cir.1994)(Finding that a hospitals decision to grant an exclusive contract to a group of anesthesiologists to the exclusion of plaintiff

**8.** Plaintiff relies on *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir.1993), as setting forth the appropriate factors for the Court to consider in addressing the standing issue. While the enumerated factors are perhaps relevant to the issue, defendants have only challenged plaintiff's standing to bring this suit on the basis that it has suffered no *antitrust* injury. Neither *In re Lower Lake Erie Iron Ore Antitrust Litig.* nor any of the other cases cited by plaintiff suggests that standing may be found absent an *antitrust* injury. *See Barton & Pittinos, Inc. v. SmithKline Beecham Corp., supra* at 182 (citing *In re Lower Lake Erie Iron Ore Antitrust Litig.* for the proposition that antitrust injury is a necessary component of antitrust standing); *Balaklaw v. Lovell,* 14 F.3d 793, 797 n. 9 (2d Cir.1994). As such, our inquiry will focus on that issue alone.

**9.** *See* Plaintiff's Memorandum of Law in Opposition to defendant's Motion to Dismiss (Docket No. 18) at p. 9; Complaint ¶ 55.

**10.** *See* Exhibit C, p. 2 at ¶ 1, offered in support of Allegheny Power's motion to dismiss (Docket No.

15). It should be noted here that both defendants have provided the Court with numerous documents to assist it in resolving the issues before it. While normally resolution of a motion to dismiss is limited to review of the allegations in the complaint, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefits Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). Here, the petition filed by the City in which it acknowledges Duquesne Light's exclusive privilege is specifically relied upon by the City in its complaint and, therefore, is properly considered by the Court for purposes of this motion. *Id. See* Complaint ¶ 22–24.

did not constitute an antitrust injury since, from the consumer's point of view, nothing about the relevant market had changed.)

Plaintiff nevertheless argues that even if it hasn't already been injured by defendants' actions, the threat of loss in the future resulting from defendants' conduct is sufficient to state an antitrust injury.

Although the threat of loss from a violation of the antitrust laws is sufficient to confer standing to obtain injunctive relief, *see* 15 U.S.C. § 26, even the threat of a loss is necessarily contingent upon possession of that which is threatened. Plaintiff's do not enjoy competition between utility companies now and therefore cannot be threatened by the loss of competition in the future.

Moreover, the threat in the instant case is speculative at best as it is contingent on the PUC permitting competition within the City in the first instance. Until that determination is made—and there is no guarantee that it will be made—the City does not stand to lose anything and the defendants' proposed merger cannot be viewed as a threatened loss. *See Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir.), *cert. denied,* 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988)("The notion that merely facing the specter of a monopoly is enough to create standing . . . is not the law.") [11]

Nor does *Blue Shield v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), upon which plaintiff principally relies serve to alter our findings in this regard. Plaintiff relies on *McCready* wherein the Supreme Court rejected the defendant's argument that McCready's injuries were too remote and indirect from the alleged antitrust violation to constitute an antitrust injury for purposes of standing.[12] Defendants in the instant case, however, have not argued that the City's injuries are too indirect or remote from the alleged violations to confer standing upon plaintiff but rather have, in essence, argued that the City has not suffered an injury at all and that it is too speculative to assume that it may suffer an injury at some point in the future. Because McCready had, in fact, already suffered an injury the case does not bear on the question before this Court of whether or not plaintiff's prospective injuries are speculative or not.

■ Finally, if plaintiff has or will suffer a loss as the result of defendants' actions, it appears that, rather than suffering from a potential loss of competition, it has merely been denied the opportunity to obtain electric service within the Redevelopment Zones at a lesser price than it would otherwise have been obligated to pay. Such an injury is not only just as contingent on the PUC's decision but, more importantly, does not appear to be what the antitrust laws were designed to prevent. *See Schuylkill Energy Resources v.*

11. Even if the Court were to perceive plaintiff as having suffered a threatened loss, plaintiff should still not prevail as the threatened harm in this case is not what makes the proposed merger illegal. *See Cargill, Inc. v. Monfort of Colorado, Inc., supra* at 128 (Stevens, J., dissenting.) To the contrary, if the merger is condemned it will likely be because of the anticompetitive effects in the whole of Allegheny County where competition between the two defendants already exists and not because the City will unable to realize a choice it never enjoyed. Viewed in this context, it appears that "the possibility of the loss of competition" is merely a restatement of the nature or existence of the alleged antitrust violation, which is not only presumed for purposes of this analysis, but does not state a loss or even the threat of a loss.

12. In *McCready,* the plaintiff brought an antitrust action against Blue Shield of Virginia from whom her employer purchased a group health plan. Under the plan, a subscriber who sought outpatient treatment for mental disorders would be reimbursed for part of the cost if the service was provided by a psychiatrist but not psychologists unless the treatment was billed through a physician. Plaintiff, who was treated by a psychologist and whose claims for reimbursement were routinely denied because they were not billed through a physician, brought suit alleging that Blue Shield and Neuropsychiatric Society of Virginia, Inc. had engaged in an unlawful conspiracy to exclude psychologists from receiving reimbursements under the plan and that her injuries stemmed from Blue Shield's failure to reimburse her for the costs of her treatment. The district court granted defendant's motion to dismiss that the injuries sustained by McCready were too indirect and remote to be considered an antitrust injury and, thus concluded that she had no standing to bring the action. The Court of Appeals for the Fourth Circuit reversed finding that McCready's loss was directly or proximately caused by the antitrust violation and she therefore had standing to maintain the suit. The Supreme Court affirmed.

**338**

PP & L, supra at 415, quoting *Vinci v. Waste Management, Inc.*, 80 F.3d 1372, 1376 (9th Cir.1996)("The antitrust laws are intended to preserve competition for the benefit of consumers in the market where the competition occurs.") As well, the absence of less expensive rates to choose from is a consequence of the lack of competition itself and does not "flow from that which makes the defendant[s'] acts unlawful". *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., supra.* Indeed, the lack of competition within the City stems from the PUC's regulations and defendants' conduct, therefore, has no bearing on the rates the City must pay to obtain electricity.[13]

Having found that plaintiff has not suffered an antitrust injury and, thus, does not have standing to maintain an antitrust suit against defendants, it follows that Count I, II and III of the complaint should be dismissed. In addition, it is recommended that the Court decline to exercise pendent supplemental jurisdiction over plaintiff's state law claims (Counts III–VIII) pursuant to 28 U.S.C. § 1367(c)(3), as the concerns of judicial economy, convenience and fairness to the parties are not present at this early stage of the proceedings. *See West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).[14]

For these reasons, it is recommended that the motions to dismiss filed by defendants Allegheny Power and Duquesne Light (Docket Nos. 10 and 13) be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Nov. 25, 1997.

---

13. The extent to which competition may be allowed between utilities is a matter within the exclusive direction of the PUC. *Peoples Natural Gas Co. v. Pennsylvania Pub. Util. Comm'n,* 123 Pa.Cmwlth. 481, 496, 554 A.2d 585, 592 (1989). *See* 66 Pa.C.S. § 501(b).

14. For these same reasons, we have not addressed defendants' alternative arguments in support of their motions to dismiss.