**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| MICHAEL WILLIAM WOODFORD AND OPTIONS INSURANCE AGENCY, | : | No. 65 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 1005 |
| | : | CD 2018 dated January 4, 2019, |
| | : | Reconsideration Denied February |
| v. | : | 15, 2019, Affirming in Part and |
| | : | Reversing in Part the Decision of the |
| | : | PA Insurance Department at No. |
| COMMONWEALTH OF PENNSYLVANIA | : | SC16-11-001 dated June 21, 2018. |
| INSURANCE DEPARTMENT, | : | |
| | : | ARGUED:  March 11, 2020 |
| Appellee | : | |


## OPINION


**JUSTICE DOUGHERTY**                    **DECIDED:  December 22, 2020**

We granted discretionary review to consider, as a matter of first impression, whether Section 310.74(a) of the Insurance Department Act of 1921 (the Act), 40 P.S. §§1-326.7, prohibits a licensed insurance producer from charging fees in addition to commissions in non-commercial, *i.e.* personal, insurance transactions.

## I. Background

Appellant Options Insurance Agency is owned by appellant Michael Woodford and both are licensed insurance producers that facilitate motor vehicle insurance contracts between insurance consumers and insurance carriers.   Adjudication and Order, 6/21/2018 at ¶¶1-5, 8; *see* 40 P.S. §310.1 (insurance producer is a "person that sells, solicits or negotiates contracts of insurance").  In June 2015, the Pennsylvania Insurance Department (the Department) began investigating appellants following a market conduct

examination of a different insurance agency, and receipt of a consumer complaint concerning appellants' fee practices. During its investigation, the Department discovered that, between March 2011 and October 2015, appellants charged a non-refundable $60-$70 fee to customers seeking to purchase personal insurance products.[1] *Id*. at ¶6. These fees were collected from the customers before appellants prepared the insurance policy applications. *Id*. at ¶7. One consumer complaint indicated appellants kept an "un-refundable broker application fee" when the consumer declined to buy a policy. N.T., 11/15/2017 at 300-01, 309. The Department's investigation also revealed appellants paid a "one-time" $50 referral fee to car dealership sales personnel when they referred their customers in need of insurance. Adjudication and Order, 6/21/2018 at ¶¶9-10.

The Department concluded appellants' fee practices included improper fees charged to consumers "for the completion of an application for a contract of insurance" and prohibited referral payments to the car dealerships. *See* 40 P.S. §310.74(b) ("no insurance producer shall charge a fee for the completion of an application for a contract of insurance"); §310.72(b)(2) (authorizing payment of certain limited referral fees).[2] Accordingly, on November 2, 2016, the Department filed an Order to Show Cause with the Insurance Commissioner (the Commissioner) alleging appellants violated the Act when they paid referral fees to non-licensed individuals contingent on the sale of

[1] Neither the Act nor the parties provide specific definitions of "personal" insurance, but it is apparent in this case that the subject personal insurance transactions involved individual drivers who sought insurance for their personal vehicles, rather than business consumers seeking insurance for a commercial vehicle.

[2] Section 310.72(b)(2) of the Act allows producers to pay: "a fee to a person that is not a licensee for referring to a licensee persons that are interested in purchasing insurance if the referring person does not discuss specific terms and conditions of a contract of insurance and, in the case of referrals for insurance that is primarily for personal, family or household use, the referring person receives no more than a one-time, nominal fee of a fixed dollar amount for each referral that does not depend on whether the referral results in a sale." 40 P.S. §310.72(b)(2).

insurance, charged consumers a fee for completing insurance applications, and demonstrated unworthiness of licensure, acted unfairly and used fraudulent practices. Order to Show Cause, 11/2/2016, ¶¶10-29; *see* 40 P.S. § 310.11(20) (relating to general lack of fitness, competency or reliability); §310.11(7) (prohibiting fraudulent, coercive or dishonest practices); §310.11(6) (prohibiting "unfair insurance practice or fraud"). The Department requested that the Commissioner revoke appellants' insurance producer licenses, bar them from future licensure, or from applying to renew any license previously held in this Commonwealth, impose a civil penalty of $5,000 per violation, order appellants to cease and desist from violating the Act, order restitution for each of the illegal fees charged to insurance consumers, and impose any other conditions deemed appropriate, including supervision for a minimum five-year period should appellants become relicensed. *Id.*, *citing* 40 P.S. §310.91(d) (penalty provision).

In an Answer and New Matter, appellants admitted they paid referral fees to automobile dealerships and charged "broker fees" to their customers, but maintained those fees did not violate the Act. Appellants also filed a Motion to Dismiss the Order to Show Cause, and provided an affidavit from Michael Woodford as evidentiary support. Woodford averred, with respect to fees paid to car dealerships, to his knowledge none of the salesmen ever "discuss specific terms or conditions of any insurance policy[,]" and appellants pay the referral fee "irrespective of whether a sale is consummated[.]" Affidavit of Michael William Woodford, 12/2/2016 at ¶¶8-10. Woodford further stated in his affidavit that appellants "charge[d] customers a broker's fee, which is also perfectly common throughout the Commonwealth[;]" the "fee is always fully disclosed in writing to and signed off on by all of our consumers, and rightfully earned for valuable insurance services rendered by Options[,]" specifically because appellants "work[ ] to identify carriers to best serve its customers' automobile insurance needs based on the individual circumstances

presented with each account[;]" and that the fee "has nothing to do with the preparation or completion of any application for auto insurance[,] in fact, that task is handled by the insurance carriers that ultimately write the business." *Id.* at ¶¶12-14.

**A. The Insurance Commissioner's Adjudication**

Efforts to resolve the dispute amicably failed and, during a February 16, 2017 prehearing conference, the parties agreed to treat appellants' Motion to Dismiss as a Motion for Summary Judgment. On April 11, 2017, the Department finally filed an Answer to appellants' December 2016 Motion to Dismiss, supported by three affidavits from automobile dealer sales representatives who asserted appellants paid them improper referral fees. Appellants filed a Motion to Strike the Department's Answer as untimely. Following oral argument, the Commissioner granted appellants' Motion to Strike but denied summary judgment in their favor. The Commissioner reasoned appellants' motion was supported only by Woodford's affidavit and although his averments about the fees were uncontradicted, an evidentiary hearing was necessary to test the affiant's credibility. *See* Order Denying Motion for Summary Judgment, 7/31/2017 at 11, *citing Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932).

Prior to the hearing before the Commissioner, the Department amended its Order to Show Cause to include an allegation that the $60-$70 fees appellants charged consumers in non-commercial personal insurance transactions also violated Section 310.74(a) which permits a "fee in addition to a commission" only in commercial transactions.[3] *See* Amendment to Order to Show Cause, 8/25/17 at 2. In response, appellants again admitted charging what they deemed "broker" fees, but asserted they

---

[3] Section 310.74(a) of the Act specifically provides: "A licensee may charge a fee in addition to a commission to a person for the sale, solicitation or negotiation of a contract of insurance for commercial business. The fee charged by the licensee shall be disclosed in advance in writing to the person and shall be reasonable in relationship to the services provided." 40 P.S. §310.74(a).

were permissible in this context because Section 310.74(a) does not expressly prohibit a "fee in addition to a commission" in personal insurance transactions.[4]

At the hearing, the Department's special investigator Michael Fissel testified appellants violated the Act because "the Department does not allow any fees to be charged in the context of personal insurance." N.T., 11/15/2017 at 302. He explained the Department had previously investigated agencies for charging "fee[s] in addition to [ ] commission[s]" in personal insurance transactions and it was currently investigating three to six others. *Id.* at 324, 348. The Department also presented Kelly Krakowski, chief of market conduct, property and casualty division, who testified the Department consistently maintained its position that "fee[s] in addition to [ ] commission[s]" in personal insurance transactions violated the Act. *Id.* at 428-29. Krakowski admitted she was unaware whether the Department ever issued guidance about this interpretation.[5] *Id.* at 442. She further testified the Department was concerned about additional fees in personal insurance transactions because automobile insurance is compulsory and consumers could thus be unfairly forced to pay higher fees. *Id.* at 428-29.

Finally, appellant Woodford testified, admitting he had previously lied to investigators about paying referral fees to the automobile dealers, because he did not

---

[4] Appellants have never claimed the additional fee was a permissible "commission" — that term refers to payments made by insurance companies or licensed producers to other licensees and is clearly not at issue here. *See* 40 P.S. §310.72(a) ("An insurance entity may pay a commission, brokerage fee, service fee or other compensation to a licensee for selling, soliciting or negotiating a contract of insurance. A licensee may pay a commission, brokerage fee, service fee or other compensation to a licensee for selling, soliciting or negotiating a contract of insurance.").

[5] Lambros Economides, General Counsel for Capitol Insurance, testified he wrote a letter following the Department's market conduct examination into Capitol and sent it to all of Capitol's insurance agents — including appellants — warning them generally against charging consumers additional fees, especially when those fees were not properly disclosed. N.T., 11/15/17 at 268-75. The Commissioner concluded the Department "approved" this letter as consistent with its position on additional fees. Adjudication and Order, 6/21/2018 at 21.

want the Department's investigator "to go kick down doors flashing his badge[.]" *Id.* at 488-89, 498-99. Woodford otherwise testified consistent with his affidavit and reiterated that the non-refundable fees charged to his customers were "broker fees" rather than prohibited application fees. *Id.* at 480-86, 490-93, 503-10, 518.

In post-hearing briefing, the Department took the position that, since Section 310.74(a) expressly allows producers to charge fees in the commercial insurance context, it clearly, by omission, precludes those fees in the non-commercial insurance context. Department's Brief at Adjudication at 16-17, *citing* 40 P.S. §310.74(a). Even if the statute were deemed ambiguous, however, the Department asserted its interpretation effectuated the intent of the General Assembly — "to protect insurance consumers from unscrupulous acts of insurance producers and licensees" charging fees in addition to a commission. *Id.* at 19 (internal quotations and citation omitted). The Department also argued its interpretation is based on the presumption the General Assembly intends to favor the public interest — by protecting consumers from unlimited fees — over the private pecuniary interest of insurance producers. *Id.* at 20, *citing* 1 Pa.C.S. §1922(5). The Department emphasized appellants' interpretation would result in the absurd result, contrary to statutory construction principles set forth in 1 Pa.C.S. §1922(1), of placing personal insurance transactions in the same category as commercial transactions despite the fact personal insurance consumers are less sophisticated than commercial consumers and deserve more protections. *Id.* at 21-22 & n.5, *citing, e.g.,* 25 Pa. Bull. 35 (Sept. 2, 1995) (Insurance Department bulletin announcing "Deregulation of Commercial Lines Property and Casualty Forms"). The Department further claimed appellants' reading conflicts with Section 310.71(b) of the Act, which allows broker fees only when a producer acts as a broker and does not receive commissions. *Id.* at 22-23. Finally, the Department maintained the Commissioner should defer to its interpretation. *Id.* at 24-25.

Appellants argued the Act does not explicitly prohibit fees in addition to commissions, such as its claimed "broker fee," in personal insurance transactions. Appellants' Brief at Adjudication at 42-43. Appellants claimed Section 310.74(a) is a penal provision because its violation subjects them to fines and the possible revocation or suspension of their license, and thus must be strictly construed against the Department. *Id.* at 43, *citing* 1 Pa.C.S. §1928(b)(1). Additionally, appellants asserted the Department's interpretation should not be afforded deference. *Id.* at 45-46.

The Commissioner first observed Section 310.74(a), which allows producers to charge fees "in addition to a commission" in commercial transactions, is ambiguous with respect to non-commercial transactions because it is subject to two reasonable interpretations as evidenced by the current dispute and the numerous investigations of other producers for charging fees like those charged by appellants. Adjudication and Order, 6/21/2018 at 18-19. The Commissioner considered the statute to be penal — and thus subject to strict construction — because violators are subject to fines and suspension or revocation of producer licenses. *Id.* at 21.[6] The Commissioner concluded that "[c]ollecting additional fees for personal insurance transactions, other than legitimate broker fees that comply with [Section] 310.71(b), is prohibited by [Section] 310.74(a)." *Id.* at 26. The Commissioner explained the Department's interpretation was entitled to deference because its "interpretation of the statute is reasonable and constitutes a valid protection of insureds against unlimited and undefined fees in the personal insurance business." *Id.* Ultimately, the Commissioner declined to penalize appellants for their past conduct that violated Section 310.74(a), emphasizing the statute was unclear and the

---

[6] The Commissioner relied on the Commonwealth Court's decision in *Snyder Bros., Inc. v. Pa. PUC.*, 157 A.3d 1018, 1029 (Pa. Cmwlth. 2017) (*en banc*), for the proposition that a statute is penal when it results in civil penalties. This Court later reversed, holding the penalty provisions at issue in that case were simply intended to enforce remedial measures. *Snyder Bros., Inc. v. Pa. PUC,* 198 A.3d 1056, 1075 n.21 (Pa. 2018).

Department had not provided clear notice of its interpretation, but the court imposed a cease and desist order applicable to future conduct. *Id.* at 21-22. In addition, the Commissioner imposed penalties for violations of other provisions of the Act, basing her decision in part on Woodford's lack of credibility.[7]

### B. The Commonwealth Court Appeal

Appellants filed a petition for review in the Commonwealth Court challenging both the Commissioner's order denying summary judgment and the Adjudication and Order ruling appellants violated Section 310.74(a) by charging fees in addition to commissions in non-commercial, personal insurance transactions. *Woodford v. Pa. Ins. Dep't*, 201 A.3d 899, 902 (Pa. Cmwlth. 2019). Appellants first argued the Commissioner erred when she denied summary judgment as the Department failed to timely answer the motion and thus did not identify any genuine issue of material fact. *Id.* at 903. The Department responded that the Commissioner was required to deny the motion for summary judgment because Woodford's affidavit was the only evidence in support of the motion. *Id.*, *citing Nanty-Glo*, 163 A. at 524 (court erred in granting a directed verdict based solely on oral testimony because credibility determinations must be left for the trier of fact). The Commonwealth Court concluded that "'because the purpose of the *Nanty-Glo* rule [is] to reserve questions of credibility for the jury, it [has] no application to an administrative proceeding in which the administrative law judge or administrative body serve[s] as the factfinder.'" *Id.*, *quoting Snyder v. Dep't of Envtl. Res.*, 588 A.2d 1001, 1004 (Pa. Cmwlth. 1991) (adopting the holding in *Peoples Nat. Gas Co. v. Pa. PUC*, 554 A.2d 585 (Pa. Cmwlth. 1989)). The court nevertheless determined appellants were not "automatically

---

[7] The Commissioner ruled appellants violated the Act's prohibition on application fees based on appellants' own documents characterizing the $60-$70 fee as an "application" fee. Adjudication and Order, 6/21/2018 at 27. Accordingly, the Commissioner imposed a $5,000 fine for violations of Sections 310.74(b), 310.11(20), 310.11(6), and 310.11(7). In fashioning her penalty, the Commissioner expressly noted Woodford's dishonesty about not paying referral fees reflected negatively on his worthiness of licensure. *Id.*

entitled to summary judgment" because "[e]ven in the absence of counter-affidavits, the moving party must still satisfy its burden of showing there are no genuine issues of material fact." *Id.* According to the panel, the Commissioner correctly determined appellants failed to satisfy that burden because "Woodford's credibility remained at issue" and "could only be tested in an evidentiary hearing[.]" *Id.* at 904.

Appellants also argued the Commissioner's Order was inconsistent because she "initially determined producers may charge fees in addition to commissions in personal/consumer transactions, but then contradicted that finding as applied to [appellants]." *Id.* The Commonwealth Court panel rejected this argument as meritless because "the Commissioner did not . . . conclude that the Department may not construe the Act to prohibit [non-commercial] fees." *Id.* The panel opined the Commissioner correctly deferred to the Department's interpretation and expressly held "'[c]ollecting additional fees for personal insurance transactions, other than legitimate broker fees that comply with [Section 310.71(b)], is prohibited by [Section 310.74(a)].'" *Id.*, *quoting* Adjudication and Order, 6/21/2018 at 26; *see also id.* at 902 n.3 (when case involves complex statutory scheme courts are wary to substitute their judgment for the expertise of an agency; "[s]tatutory and regulatory interpretations of a regulatory agency are accorded great deference"), *citing Grimaud v. Pa. Ins. Dep't*, 995 A.2d 391 (Pa. Cmwlth. 2010). The panel further noted the Commissioner's decision not to impose retroactive penalties "was reasonable in addressing an issue of first impression, especially where the evidence revealed confusion among producers and lack of express notice by the Department of its position concerning fees permitted under the Act." *Id.* at 904-05. The panel recognized the penalties imposed were "consistent with [the Commissioner's] analysis and conclusions concerning the fees permitted and prohibited by the act." *Id.* at 905.

The panel also rejected appellants' claim the Commissioner erred in ordering them to cease and desist from charging additional fees in personal insurance transactions because the Commissioner actually held the Act permits those fees. *Id.* The panel opined appellants "misconstrue[d] the Commissioner's decision" because after concluding Section 310.74(a) was ambiguous, she clearly deferred to the Department's interpretation that precludes appellants from charging "fee[s] in addition to [ ] commission[s]" in personal insurance transactions. *Id.* The panel upheld the Commissioner's cease and desist order and concluded the decision not to impose retroactive penalties did not undermine the ruling that collection of such fees in personal insurance transactions may not continue going forward. *Id.*[8]

## II. The Present Appeal

We granted appellants' petition for allowance of appeal to consider the following questions:

(1) With respect to a question of statutory construction that the Insurance Commissioner and the Commonwealth Court readily acknowledge was a "matter of first impression", did the Commonwealth Court Panel err when it afforded deference to the Insurance Department's interpretation of an ambiguous statute that was penal in nature instead of strictly construing the statute against the Insurance Department, as required by Pennsylvania Law?

(2) Does the Commonwealth Court Panel's holding conflict with other intermediate appellate court opinions in holding that [appellants] were not entitled to summary judgment notwithstanding the fact that the Insurance Department failed to reply to [appellants'] motion for summary

---

[8] The Commonwealth Court addressed three other arguments not relevant to this appeal. *See* 201 A.3d at 906-07 (Commissioner's finding of a violation of Section 310.74(b) related to application fees was supported by substantial evidence); *id.* at 907 (affirming Commissioner's imposition of penalties relating to Sections 310.74(a) and 310.74(b) but reversing imposition of penalties relating to Section 310.72(b)(2)); *id.* at 908-09 (Commissioner properly considered violations of Sections 310.11(7) (prohibiting fraudulent, coercive or dishonest practices) and (20) (relating to general lack of fitness, competency or reliability) in fashioning a penalty).

judgment and failed to submit evidence to contradict a sworn affidavit submitted by [appellants]?

*Woodford v. Pa. Ins. Dep't*, 217 A.3d 192 (Pa. 2019) (*per curiam*). In considering whether the Commonwealth Court erred, we are mindful that review of an administrative agency's adjudication and order "is limited to determining whether constitutional rights have been violated, an error of law has occurred, rules of administrative procedure have been violated, or the necessary findings of fact are not supported by substantial evidence." *O'Rourke v. W.C.A.B. (Gartland)*, 125 A.3d 1184, 1188 (Pa. 2015), *citing* 2 Pa.C.S. §704. We consider appellants' second question first, to determine whether appellants were entitled to summary judgment on procedural grounds at the agency level, before proceeding to analyze the relevant statutes.

**A.**

Appellants argue the Commissioner erred when she denied summary judgment in their favor after the Department failed to file a timely answer to their motion to dismiss. Appellants claim that since the Department failed to oppose Woodford's affidavit, which was the only evidence presented and which contradicted entirely the Department's factual allegations, there were no material issues of fact remaining, especially one regarding Woodford's credibility. Appellants claim the *Nanty-Glo* rule, which ordinarily precludes summary judgment based on affidavits alone, does not apply in agency proceedings like this one. *See, e.g.*, *United Healthcare Benefits Tr. v. Ins. Comm'r of Pennsylvania*, 620 A.2d 81 (Pa. Cmwlth. 1993) (summary judgment in administrative proceeding properly granted where there was no dispute of material facts); *Prop. Owners, Residents, and/or Taxpayers of Pleasant Valley Sch. Dist. v. Dep't of Cmty. Affairs*, 552 A.2d 769 (Pa. Cmwlth. 1989) (motion to dismiss properly granted where moving party's uncontradicted affidavit and non-moving party's failure to respond left no issue of material fact).

Appellants contend the Commonwealth Court should have granted judgment in their favor because the Department failed to prove violations of the Act.

The Department argues appellants' reliance on *United Healthcare* and *Pleasant Valley* is misplaced because neither involved a situation where an issue of material fact remained or where credibility was at issue. Here, the Department asserts, appellants' motion for summary judgment was based entirely upon factual averments contained in Woodford's affidavit. The Department contends both lower tribunals correctly determined Woodford's credibility was at issue, thus precluding summary judgment. Department's Brief at 26 (material facts that could not be supported by Woodford's affidavit alone included "whether the referral fees were conditioned on the actual sale of an insurance contract[,]" "whether there were any discussions by the referring automobile salesperson of the specific terms and conditions of the insurance contracts[,]" and "whether the additional fees charged by [appellants] were related to the preparation or completion of an insurance application"). The Department asserts the Commonwealth Court correctly recognized an evidentiary hearing was required because "'[e]ven in the absence of counter-affidavits, the moving party must still satisfy its burden of showing that there are no genuine issues of material fact'" and any doubts must be resolved in favor of the non-moving party. *Id.* at 27, *quoting Woodford,* 217 A.3d at 903. Finally, the Department emphasizes that even if the *Nanty-Glo* principle does not apply to the agency proceeding, the fact-finder need not blindly accept an uncontradicted affidavit when credibility is at issue and where the movant failed to carry the burden of proving a genuine issue of material fact does not exist.

In *Nanty-Glo*, the trial court entered a directed verdict in favor of the plaintiff based on the oral testimony of two witnesses. 163 A. at 524. The defendant had not presented any evidence contradicting the witnesses' testimony, but nevertheless argued on appeal

a directed verdict was impermissible because their credibility must be left to the jury. *Id.*

This Court agreed a directed verdict was improper under the circumstances:

> However clear and indisputable may be the proof when it depends upon oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence. This rule is firmly established. The credibility of these witnesses, without whose testimony plaintiff could not have recovered, was for the jury[.]

*Id.* (internal citations and quotations omitted). The *Nanty-Glo* rule is thus premised on the notion that credibility determinations must be left to the finder of fact. *See Bailets v. Pennsylvania Turnpike Comm'n*, 123 A.3d 300, 304 (Pa. 2015); *Penn Ctr. House, Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989); J. Palmer Lockhard, *Summary Judgment in Pennsylvania: Time for Another Look At Credibility Issues*, 35 Duq. L. Rev. 625, 629 (1997) ("The *Nanty-Glo* rule is apparently bottomed on two beliefs[,] . . . [t]he first belief is that the determination of whether a witness is credible is a matter properly left to the finder of fact" and "[t]he second belief is the belief in the efficacy of cross-examination as a means of attacking the credibility of a witness.").

We have "consistently adhered to the *Nanty-Glo* rule" since 1932, *Curran v. Philadelphia Newspapers, Inc.*, 439 A.2d 652, 662 (Pa. 1981), and we have also applied the rule to summary judgment motions based exclusively on oral testimony. *See Bremmer v. Protected Home Mut. Life Ins. Co.*, 260 A.2d 785, 786-87 (Pa. 1970) (summary judgment not appropriate where the only evidence in support of summary judgment was oral deposition testimony of two witnesses). This common law rule is also referenced in our Rules of Civil Procedure. *See* Pa.R.C.P. 1035.2 Note ("Oral testimony alone, either through testimonial affidavits or depositions, of the moving party or the moving party's witnesses, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact."), *citing Nanty-Glo, supra*, and *Penn Ctr.*,

*supra*; Pa.R.C.P. 1035.3(a)(1) Note ("If the moving party has supported the motion with oral testimony only, the response may raise the defense that there is a genuine issue of material fact because the cause of action is dependent upon the credibility and demeanor of the witnesses who will testify at trial."), *citing Nanty-Glo*, *supra*, and *Penn Ctr.*, *supra*.

Here, the Commissioner applied *Nanty-Glo* to deny summary judgment in favor of appellants because they relied solely on Woodford's affidavit and his credibility was at issue. *See* Order, 7/31/2017 at 11. Although the Commonwealth Court ultimately affirmed the Commissioner's decision in relevant part, the panel declined to apply *Nanty-Glo* because it concluded the rule does not apply in administrative proceedings. *Woodford*, 201 A.3d at 903. The panel relied in part on *Peoples Nat. Gas Co.*, which held "*Nanty-Glo* has no application [to] . . . an administrative proceeding wherein the ALJ serves as the fact finder." 554 A.2d at 589. The panel in *Peoples* provided no authoritative support for this holding, and in fact, that decision arose in the context of stipulated facts. *See id.* (subsequent to the court granting summary judgment, the parties held an evidentiary hearing and stipulated to facts which, according to the court, "establish[ed] the truth of [affiant]'s averments"); *see also id.* ("the testimony elicited during cross-examination of [the affiant] verifies the accuracy of the statements in the affidavit").

In any event, we cannot agree with the Commonwealth Court's conclusion that the *Nanty-Glo* rule has no place in the agency context, particularly in a case like this one where issues of material fact are purportedly resolved by untested statements in the moving party's affidavit; that the Insurance Commissioner was the factfinder in the present scenario does not mean an evidentiary hearing is precluded if there are questions of material fact at issue. Our focus should be trained instead on the purpose of summary judgment. *See Penn Ctr.*, 553 A.2d at 902 ("The function of the summary judgment

proceedings is to avoid a useless trial but is not, and cannot, be used to provide for trial by affidavits or trial by depositions.") (internal quotations and citation omitted). To that end, we recognize a motion for summary judgment is proper "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (internal quotations and citation omitted); *see also Penn Ctr.*, 553 A.2d at 903 (a court "must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties"). When an issue of fact remains, the matter proceeds to trial, or in this case, to an evidentiary hearing and adjudication before the Commissioner. And we have long held a witness's credibility is "not [a] proper consideration[ ] at summary judgment; rather, such [a] determination[ ] reside[s] in the sole province of the trier of fact[.]" *Summers*, 997 A.2d at 1161.

Here, Woodford's affidavit was the lone evidentiary support for appellants' own motion for summary judgment. The affidavit directly refuted the Department's position appellants violated Sections 310.72(b)(2) and Section 310.74(b) by including material statements of fact pertaining to the challenged fees. *See* Affidavit of Michael William Woodford, 12/2/2016 at ¶¶8-10 (Appellants "pay[ ] referral fee[s] whether or not a sale is completed"); *id.* ¶15 (broker's fee is unrelated to the "preparation or completion of any application for auto insurance"). Under such circumstances, we find no error in the Commissioner's decision to proceed to a hearing before entering her order and adjudication.[9] Moreover, notwithstanding its broad (and unnecessary) declaration that

---

[9] We recognize Woodford's affidavit was uncontradicted because the Department failed to timely respond to appellants' motion to dismiss, which was ultimately treated as a motion for summary judgment. To the extent appellants take the position they were entitled to summary judgment on this basis, we note the Department was not required to respond at all. *See* Pa.R.C.P. 1035.3(d) ("[s]ummary judgment **may** be entered against

*Nanty-Glo* is inapplicable in administrative proceedings, the panel below also correctly recognized credibility questions precluded summary judgment in this case. *See Woodford*, 201 A.3d at 904 ("Because credibility could only be tested in an evidentiary hearing, the Commissioner declined to grant summary judgment based solely on Woodford's affidavit. We agree with the Commissioner's conclusion that genuine issues of material fact precluded summary judgment[.]"). Woodford's credibility was a material issue in the case as was amply demonstrated by his own testimony before the Commissioner. *See* N.T., 11/15/2017 at 488-89, 498-99 (Woodford lied about charging referral fees because he did not want Fissell "to go kick down doors flashing his badge").

**B.**

We proceed to consider whether the Commonwealth Court erred in upholding the Commissioner's determination that appellants violated Section 310.74(a) when they charged their customers a "fee in addition to a commission" in non-commercial insurance transactions. Apparently conceding the statute is ambiguous, appellants first argue the panel should not have deferred to the Department's interpretation of Section 310.74(a) because the statute is penal and thus "must be strictly construed against, and without deference to, the Insurance Department[.]" Appellant's Brief at 19, *citing* 1 Pa.C.S. §1928(b)(1) (penal provisions "shall be strictly construed"). Appellants assert the

a party who does not respond") (emphasis added). Appellants, as movants, had the burden of proving they were entitled to judgment as a matter of law and that no issues of material fact remained; the Commissioner could properly deny judgment in the absence of such proof. *See, e.g.*, *Summers*, 997 A.2d at 1159.

Additionally, appellants' reliance on *United Healthcare* and *Property Owners* is unavailing. In *United Healthcare*, the Commonwealth Court merely held that in the absence of issues of material fact, summary judgment is proper and no evidentiary hearing is required under administrative agency law. 620 A.2d at 83. In *Property Owners*, the Commonwealth Court upheld the administrative body's decision to grant a motion to dismiss supported by three affidavits where the non-moving party failed to respond or refute the facts contained in the affidavit, 552 A.2d at 772, but we are not bound by Commonwealth Court decisions. *See, e.g., Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 394 (Pa. 2014).

Commonwealth Court's reliance on *Grimaud* for the proposition that courts should defer to an agency's interpretation of complex statutory schemes is misplaced in this context because here, unlike *Grimaud*, the statute is penal. They emphasize that the penalties for violations are severe, such as suspension or revocation of licensure. *Id.* at 20 n.9, *citing* 40 P.S. §310.91(d) (upon violation of the Act the Department may deny, suspend, refuse to renew or revoke a license, impose a penalty not exceeding $5,000 for each violation, issue a cease and desist order, and/or impose other conditions as the Commissioner deems appropriate). Appellants claim the panel erred by not even considering the rule of lenity which requires the statute be interpreted in their favor.[10] According to appellants, any punishment for their alleged violations "cannot withstand scrutiny[.]" *Id.* at 22.

Initially, the Department asserts strict construction of Section 310.74(a) is not required because the provision is not penal in nature. The Department relies on *Snyder Bros.* for the proposition the Act's penalties are merely a means to enforce the statute's remedial purpose, *i.e.*, the protection of insurance consumers. Department's Brief at 12, *citing Snyder Bros.*, 198 A.3d at 1075 n.21. Here, the Department asserts Section 310.74(a) is intended to protect consumers by limiting the kind of fees that may legally be charged in personal insurance transactions. To the extent the rule of lenity is applicable to the statutory construction analysis, the Department argues it would apply to interpretation of the Act's penalty provisions rather than the substantive prohibitions of

---

[10] In support of this argument, appellants rely on the Commonwealth Court's decision in *McGrath v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 146 A.3d 310 (Pa. Cmwlth. 2016) (*en banc*), where the *en banc* panel opined a statute that suspends or revokes licensure is penal in nature and must be strictly construed. Appellant's Brief at 20. Although we later affirmed the Commonwealth Court, we did not apply the rule of lenity. *See McGrath v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 173 A.3d 656, 664 n.14 (Pa. 2017).

Section 310.74. The Department further argues that, despite appellants' contrary claims, the Commonwealth Court did acknowledge the rule of lenity by affirming the Commissioner's decision not to penalize appellants' past conduct due specifically to the lack of clarity of the statute's terms.[11]

Next, the Department argues the Commissioner and Commonwealth Court appropriately deferred to its interpretation that Section 310.74(a) authorizes "fee[s] in addition to [ ] commission[s]" in commercial insurance transactions but not in personal insurance transactions because it has expertise in enforcing and interpreting the Act's complex regulatory scheme. *Id.* at 16, *citing* 1 Pa.C.S. §1921(c)(8) (General Assembly's intent can be ascertained by considering administrative agency's interpretation). The Department claims a court should refrain from deferring to the agency's interpretation only where that interpretation is clearly erroneous or frustrates the General Assembly's intent, which is not the case here because the Department's interpretation advances the legislature's objective of protecting "unsophisticated insurance consumers" from being "subject to unfettered fees[.]" *Id.* at 17.

Even if deference is unwarranted, the Department argues the rules of statutory construction support its interpretation of Section 310.74(a) as permitting "fee[s] in addition to [ ] commission[s]" only in commercial insurance transactions. The Department observes the General Assembly clearly omitted personal insurance transactions when it used language allowing the fees in "commercial" transactions. According to the Department, an interpretation of Section 310.74(a) that allows additional fees in the personal insurance context would violate the maxim *expressio unius est exclusio alterius* — the express mention of one thing implies the exclusion of others — and would require

---

[11] Appellants claim the Department waived this argument because they previously agreed that the statute was penal in nature. Appellants' Reply Brief at 1. As we determine *infra,* the penal/remedial nature of the statute ultimately is not dispositive.

courts to insert words not contemplated by the legislature.[12]  The Department contends appellants' reading would lead to the absurd result of undermining the General Assembly's purpose of protecting ordinary consumers, who the Department views as less savvy than commercial insurance customers, from unscrupulous insurance producers and unfettered fees.  The Department maintains its interpretation of Section 310.74(a) is the only one that effectuates the intent of the General Assembly and elevates the public interest over the private pecuniary interests of insurance producers.  *Id.* at 23, *citing* 1 Pa.C.S. §1922(5) (General Assembly intends to favor public interest against private interest).  Finally, the Department observes its interpretation is in harmony with other provisions in the Act that prohibit insurance producers from collecting multiple fees without providing additional services.  *See id.* at 24, *citing* 40 P.S. §310.71(b) (permitting additional fees when an insurance producer is acting as a broker and does not receive a commission) and 40 P.S. §310.74(b) (producers cannot collect application fees in addition to commission).

We begin our analysis by restating the pertinent statutory text.  Section 310.74 of the Act provides:

> (a) **General Rule.** --A licensee may charge a fee in addition to a commission to a person for the sale, solicitation or negotiation of a contract of insurance for commercial business. The fee charged by the licensee shall be disclosed in advance in writing to the person and shall be reasonable in relationship to the services provided.
>
> (b) **Application Fee.** --Notwithstanding other provisions of this section, no insurance producer shall charge a fee for the completion of an application for a contract of insurance.

---

[12] Appellants claim the Department makes this specific argument for the first time on appeal, suggesting it is waived.  Appellants' Reply Brief at 1 n.2.  However, the Department has consistently argued Section 310.74(a) explicitly permits additional fees in commercial transactions and implicitly prohibits those fees in personal insurance transactions.  *See* Department's Brief at Adjudication at 19 ("[Section] 310.74 expressly allows [additional fees] to be charged only in connection with commercial insurance transactions, and implicitly prohibits them in non-commercial transactions.").

40 P.S. §310.74. The Commissioner determined appellants violated this statute when they charged a $60-$70 fee to their customers seeking personal motor vehicle insurance, that is, non-commercial transactions. The Commissioner expressly held: "To the extent that any portion of the fee is related to the completion of an application," it violates Section 310.74(b). Adjudication and Order, 6/21/2018 at 27. Moreover, to the extent the fee constituted something other than an "application fee," the Commissioner acknowledged it would violate subsection (a) due to the non-commercial nature of the subject transactions. *Id.* at 26-27. The Commonwealth Court affirmed the Commissioner's reading of Section 310.74(a), and approved the penalties imposed on appellants, and we now must determine whether this was error.[13]

Our interpretation of Section 310.74(a) is guided by the Statutory Construction Act, 1 Pa.C.S. §§1501-1991. The polestar in our quest is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. §1921(a). We necessarily begin with the language of the statute which is "[t]he first and best indication of legislative intent." *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 290-91 (Pa. 2018). When the plain language is clear and unambiguous we must not disregard it in pursuit of the law's spirit. 1 Pa.C.S. §1921(b). When the text of the statute is ambiguous, then — and only then — do we advance beyond its plain language and look to other considerations to discern the General Assembly's intent. *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 903 (Pa. 2016). Courts may resolve an ambiguity by considering the following factors: 1) the occasion and necessity for the statute; 2) the circumstances under which it was enacted; 3) the mischief to be remedied; 4) the object to be attained; 5) the former law, if any, including other statutes upon the same or similar subjects; 6) the consequences of a particular interpretation; 7) the contemporaneous legislative history; and 8) legislative

---

[13] The present appeal does not challenge the decisions below relating to the prohibition against application fees in Section 310.74(b).

and administrative interpretations of such statute. 1 Pa.C.S. §1921(c). We are also mindful that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "the General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S. §1922(1), (5).

As stated, Section 310.74(a) expressly allows licensed insurance producers — such as appellants — to "charge a fee in addition to a commission to a person for the sale, solicitation or negotiation of a contract of insurance for commercial business." 40 P.S. §310.74(a). Although the statute explicitly refers to "commercial business," it does not specify whether these fees in addition to commission may be charged for non-commercial transactions, which are at issue here, except that application fees are expressly precluded in all circumstances under subsection (b). The Department asserts that because Section 310.74(a) explicitly permits additional fees in commercial insurance transactions, it implicitly prohibits those fees in personal insurance transactions. Appellants contend subsection (a) permits additional fees in personal insurance transactions because it does not explicitly prohibit them. *See also* Adjudication and Order, 6/21/2018 at 18-19 (holding subsection (a) open to more than one reasonable interpretation based on evidence Department was investigating other agencies for charging a fee in addition to a commission in consumer transactions). In this sense, subsection (a) is at least plausibly subject to multiple interpretations of its text. *See, e.g., Trust Under Agreement of Taylor*, 164 A.3d 1147, 1155-56 (Pa. 2017) (ambiguity exists where there are at least two reasonable interpretations of relevant text).

Guided by the aforementioned principles of statutory interpretation, including the Statutory Construction Act, we are ultimately persuaded the lower tribunals did not err in their finding appellants violated Section 310.74(a). First, we consider the purpose of the Act generally. *See* 1 Pa.C.S. §1921(c)(1)-(4). Although the General Assembly did not

expressly define the statute's purpose, we note the Commissioner considers the Act to have the dual purpose of protecting both buyers and sellers of insurance through a comprehensive scheme that includes protections for insurance consumers as well as clear guidelines for entities that sell insurance. *See* Adjudication and Order, 6/21/18 at 20.

Next, we observe that, although Section 310.74(a) states "[a] licensee may charge a fee in addition to a commission to a person for the sale, solicitation or negotiation of a contract of insurance for **commercial business**[,]" 40 P.S. §310.74(a) (emphasis added), it does not state similar fees may be charged in personal insurance transactions. The determination such fees may thus not be charged in non-commercial transactions is consistent with the maxim *expressio unius est exclusio alterius*, such that "the inclusion of a specific matter in a statute implies the exclusion of other matters." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) (internal citation and quotation omitted); *see also id.* ("'although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say'"), *quoting Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001).

We may also consider the potential consequences of the proffered interpretations, 1 Pa.C.S. §1921(c)(6), and in doing so we note the natural result of the Department's interpretation gives meaning to the General Assembly's specific inclusion of "commercial business," while avoiding the improper insertion of words the legislature saw fit not to include. Appellants, by contrast, would have us rewrite the statute to say licensees may charge fees in addition to commissions for selling insurance for "commercial **and personal** business," and this we may not do. *See Commonwealth v. Derhammer*, 173 A.3d 723, 729 (Pa. 2017) (courts are not authorized to insert words into statutes).

A reading of Section 310.74(a) that prohibits additional fees in non-commercial insurance transactions is further bolstered by its consistency with the apparent purpose of the Act. The General Assembly specifically allowed extra fees in "commercial business" transactions in Section 310.74(a) and thus provides clear guidance to insurance producers. And, the language of subsection (a) also reflects the apparent legislative goal of protecting ordinary insurance consumers (as opposed to business entities) from extra fees. The statutory scheme, when considered as a whole, recognizes that licensed producers may receive commissions from the insurance carrier, *see* 40 P.S. §310.72, and therefore need not receive additional fees from non-business customers. Moreover, with respect to non-commercial insurance transactions, the Act does allow a "broker fee," but only if the producer complies with the procedures outlined in a completely separate statute, and appellants do not claim they complied with those requirements, despite occasionally referring to the $60-$70 fee as a "broker fee." *See* 40 P.S. §310.71(b) (producer acting as a broker must execute a written agreement delineating the services to be provided and disclosing fees paid to the producer by the consumer). Again, viewing the statutory scheme as a whole, this broker fee is permitted in certain circumstances where the producer represents the consumer without receiving a commission from the insurance carrier. In this context, Section 310.74(a) strikes a balance consistent with the Act's dual purpose by barring producers from double dipping on fees and limiting the costs imposed on personal insurance consumers.

Our reading is not undermined by appellants' claim that Section 310.74(a) should be construed in their favor and against the Department because it is a penal, rather than a remedial, statute. First, we note Section 310.74 is aimed at describing the fees that may (and may not) be charged by insurance producers, and is at least partly intended to protect consumers from improper fees. In addition, we recognize the penalties for

violations of the Act are enabled by a separate statute. *See, e.g.*, 40 P.S. §310.91(d) (describing penalties to be imposed for violations). We thus agree with the Department that the Act's penalties provide the means to enforce one remedial purpose of Section 310.74, *i.e.*, the protection of insurance consumers. *See Snyder Bros.*, 198 A.3d at 1075 n.21 ("The penalty provisions [of the applicable statute] are imposed only if a [natural gas] producer fails to pay the required [fee]. Inasmuch as the chief purpose of the [fee] provisions of [the statute] is to help municipalities offset the adverse effects of the production of natural gas . . . these provisions are remedial in nature. Because the separate penalty provisions are merely the means by which these remedial measures are enforced, strict construction of the [fee] provisions is not required."). Accordingly, to the extent the rule of lenity is applicable in a statutory construction analysis, it would apply to an interpretation of the Act's penalty provisions, rather than subsection (a) which is at issue here.[14]

As Justice Todd recognizes, "'there is no impropriety in putting a literal construction on a penal clause, and a liberal construction on a remedial clause in the same statute.'" Concurring and Dissenting Op. at 5, *quoting Verona v. Schenley Farms Co.*, 167 A. 317, 320 (Pa. 1933) (internal quotations omitted). But we must strictly construe only the penal provisions in a statute. 1 Pa.C.S. §1928(b)(1). *See Com., by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 817 (Pa. 1974) (logically flawed to conclude entire statute is penal if it contains penal provision).[15] Our conclusion maintains this balance by

---

[14] Appellant's reliance on *McGrath, supra*, for the opposite proposition is misplaced. As explained *supra* at footnote 10, we affirmed the Commonwealth Court in that case by utilizing other tools of statutory construction, without applying the rule of lenity. *McGrath*, 173 A.3d at 664 n.14.

[15] Along those lines, Justice Story, writing for the United States Supreme Court, noted:

considering Section 310.74, a remedial provision, separately from Section 310.91, the penal provision designed to enforce it. To the extent Justice Todd concludes Section 310.74 should be construed strictly because it "prohibit[s] or limit[s] particular insurance sales practices[,]" Concurring and Dissenting Op. at 6, we emphasize that Section 310.74 shields consumers — both commercial and non-commercial — from improper fees, and in this way is every bit as remedial as the statute at issue in *Snyder Bros. But see id.* at 6 n.2 (asserting section 310.74 "stands in marked contrast to the provisions at issue in *Snyder Brothers*").[16]

Finally, we consider the Department's own interpretation of Section 310.74(a), which limits the authorized "fee in addition to a commission" to commercial business only. It is clear the Commonwealth Court relied at least in part on the Department's position. *See* 1 Pa.C.S. §1921(8) (court may consider administrative interpretations of ambiguous statute to discern its meaning); *see also Woodford*, 201 A.3d at 902 n.3 ("Statutory and

---

> In one sense, every law imposing a penalty or a forfeiture may be deemed a penal law; in another sense, such laws are deemed, and truly deserve to be called, remedial. The judge was therefore strictly accurate, when he stated that "It must not be understood that every law which imposes a penalty is, therefore, legally speaking, a penal law, that is, a law which is to be construed with great strictness in favor of the defendant. Laws enacted for the prevention of fraud, for the suppression of public wrong, or to effect a public good, are not in the strict sense, penal acts, although they may inflict a penalty for violating them."

*Taylor v. United States*, 44 U.S. 197, 210 (1844).

[16] Moreover, even without applying the rule of lenity, our canons of statutory construction have brought us to an interpretation consistent with the General Assembly's intent. *Cf. Yates v. United States*, 574 U.S. 528, 547-48 (2015) ("Finally, if our recourse to traditional tools of statutory construction leaves any doubt about the meaning of [the term at issue], as [it] is used in [the statute], we would invoke" the rule of lenity.); *McGrath*, 173 A.3d at 666-68 (Wecht, J., concurring) (application of rule of lenity proper when "faced with a set of statutory provisions that so stubbornly defy harmonization" and where one party's interpretation would have the Court add a word to the statute, while the other party would have the Court remove a word).

regulatory interpretations of a regulatory agency are accorded great deference."). We need not determine whether the agency's interpretation is entitled to special deference, however, because the foregoing textual analysis reveals the Department's reading aligns with our own conclusions regarding the statute's meaning. *Cf. GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless Steel USA, LLC*, __ U.S. __, 140 S.Ct. 1637, 1647 (2020) ("Our textual analysis aligns with the Executive's interpretation so there is no need to determine whether the Executive's understanding is entitled to 'weight' or 'deference.'"), *citing Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114-15, n.8 (2002) ("[T]here is no need to resolve deference issues when there is no need for deference.").[17]

### III. Conclusion

Accordingly, we hold the lower tribunals did not err when they determined Section 310.74(a) of the Act did not authorize appellants to charge the $60-$70 non-refundable fee to their customers seeking to purchase personal motor vehicle insurance. We therefore affirm the Commonwealth Court's decision upholding the Commissioner's Adjudication and Order.

Chief Justice Saylor and Justices Baer and Mundy join the opinion.

Justice Donohue files a concurring opinion.

Justice Wecht files a concurring opinion in which Justice Donohue joins.

Justice Todd files a concurring and dissenting opinion.

---

[17] As these precedents make clear, it is not necessary to engage the Commonwealth Court's discussion of agency deference, and so we have not improperly avoided what Justice Donohue considers the "primary reason" we allowed appeal. Concurring Op. (Donohue, J.) at 2. We simply decline to issue an advisory opinion on a non-dispositive question.